Loverta **ALEXANDER, individually and on behalf of her minor son, Jerome Alexander, and all other persons similarly situated, Plaintiffs,**

and

Georgia **Townsend, individually and on behalf of her dependent daughter, Omega Minor, Intervening Plaintiffs,**

v.

Harold O. **SWANK, Director, Illinois Department of Public Aid, David L. Daniel, Director, Cook County Department of Public Aid, and Mae Withers, Supervisor, Woodlawn District Office, Cook County Department of Public Aid, Defendants.**

**No. 68 C 2134.**

United States District Court, N. D. Illinois, E. D.

April 30, 1970.

See also, D.C., 314 F.Supp. 1078.

Melvin B. Goldberg, Chicago, Ill., and James Spitzer, Jr., Asst. Gen. Counsel, New York City, for plaintiffs.

Michael F. Lefkow, Thad B. Eubanks, and Arnold D. Breyer, Chicago, Ill., for intervening plaintiffs. Stanley A. Bass, Chicago, Ill., and Carl Rachlin, of Scholarship, Education and Defense Fund for Racial Equality, New York City, of counsel for all plaintiffs.

William J. Scott, Atty. Gen., of Illinois, and Bernard Genis, Asst. Atty. Gen., Chicago, Ill., for defendant Swank.

Edward V. Hanrahan, State's Atty. of Cook County, and Dean H. Bilton, Asst. State's Atty., Chicago, Ill., for defendants Daniel and Withers.

Before SWYGERT, Chief Circuit Judge, PERRY and MAROVITZ, District Judges.

## MEMORANDUM OPINION

SWYGERT, Chief Judge.

This is a class action challenging the validity of Art. IV, section 4–1.1 of the Illinois Public Aid Code, Ill.Rev.Stat. ch. 23, § 4–1.1 (1967),[1] and Illinois Public Aid Regulation 150 issued pursuant thereto.[2] Section 4–1.1 provides that needy children who are deprived of parental support and are between eighteen and twenty-one years of age and in regular attendance in high school, vocational school, or technical training school are eligible to receive Aid to Families with Dependent Children (A.F.D.C.) benefits. Plaintiffs allege that section 4–1.1 is inconsistent with section 406(a) (2) of the Social Security Act, 42 U.S.C. 606 (a) (2) and void under the Supremacy Clause.[3] They also assert that section 4–1.1 violates equal protection of the laws by failing to provide benefits to otherwise eligible children between the ages of eighteen and twenty-one who are attending college. We hold that section 4–1.1 is consistent with section 406(a) (2) of the Social Security Act and that it comports with the requirements of the fourteenth amendment. Accordingly, the relief requested by the plaintiffs must be denied.

This action was instituted on November 8, 1968 by plaintiff Loverta Alexander, individually and on behalf of her son, Jerome Alexander. Plaintiff's action was brought, pursuant to Rule 23 (a), (b) (2) and (b) (3), Fed.R.Civ.P., on behalf of all persons similarly situated. The members of the plaintiff class include all children between the ages of eighteen and twenty-one and their parents or legal guardians who are denied A.F.D.C. benefits solely because said

---

1. Section 4–1.1 of the Illinois Public Aid Code, Ill.Rev.Stat. ch. 23, § 4–1.1 (1967) provides:

    Child Age Eligibility.) The child or children must be under age 18, or age 18 or over but under age 21 if in regular attendance in high school or in a vocational or technical training school. "Regular Attendance," as used in this Section, means attendance full time during the regular terms of such schools, or attendance part time during such regular terms as may be authorized by rule of the Illinois Department for the purpose of permitting the child to engage in employment which supplements instruction or which otherwise enhances his development toward a self-supporting status.

2. Illinois Public Aid Regulation 150 provides in part:

    Age Requirements—Dependent children under 18 years of age, unless 18 through 20 years of age and in regular attendance in high school or vocational training school. (This does not include 18 through 20 year old children in college.)

3. Section 406 of the Social Security Act, 42 U.S.C. 606 provides in part:

    (a) The term "dependent child" means a needy child * * * (2) who is (A) under the age of eighteen, or (B) under the age of twenty-one and (as determined by the State in accordance with standards prescribed by the Secretary) a student regularly attending a school, college, or university or regularly attending a course of vocational or technical training designed to fit him for gainful employment.

children are college or university students instead of high school, trade school, or vocational school students. The defendants, Harold O. Swank, David L. Daniel, and Mae Withers, are officials responsible for the administration of A. F.D.C. benefits in Illinois. On March 11, 1969 Georgia Townsend intervened as plaintiff both individually and on behalf of her minor daughter, Omega Minor, and as a member of the class described in the original complaint filed by Loverta Alexander.

Plaintiffs' complaint states a cause of action under 42 U.S.C. § 1983 and is properly maintained as a class action in accordance with Rule 23, Fed.R.Civ.P. This court was correctly convened as a three-judge court pursuant to 28 U.S.C. §§ 2281, 2284 and jurisdiction to hear plaintiffs' action is proper under 28 U.S.C. §§ 1343(3), 2201.

Both plaintiffs and defendants have moved for summary judgment on the basis of material before us. All questions presented in this appeal involve issues of law and can be appropriately determined on the basis of the affidavits and pleadings. As a preliminary matter, defendants argue that the affidavits of plaintiffs demonstrate that Jerome Alexander and Omega Minor are not students in regular attendance in college and that they, therefore, lack standing to maintain this action on behalf of the plaintiff class. We disagree.

To possess standing to challenge the validity of a state statute the party seeking relief must allege " 'such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions.' Baker v. Carr, 369 U.S. 186, 204, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962)." Flast v. Cohen, 392 U.S. 83, 99, 88 S.Ct. 1942, 20 L.Ed. 2d 947 (1968). Under this standard a needy child between the ages of eighteen and twenty-one who merely wishes to attend college might possess a personal stake sufficient to establish the requisite

adverseness necessary for standing to challenge section 4–1.1. It should be undisputed, however, that standing exists if a person is actually denied benefits for any period solely because he regularly attends college rather than high school or vocational school. Thus, plaintiffs need not show that they are presently entitled to A.F.D.C. payments. We think the pleadings and the affidavits sufficiently demonstrate that Jerome Alexander and Omega Minor regularly attended college in the past and were deprived of A.F.D.C. benefits as a result.

Section 4–1.1. provides that a high school or vocational school student must be in "regular attendance" in order to receive A.F.D.C. benefits. Regular attendance is defined as "attendance full time during the regular terms of such schools, or attendance part time * * * as may be authorized by rule of the Illinois Department for the purpose of permitting the child to engage in employment. * * * " The key to the interpretation of regular attendance is the meaning of "attendance full time." That term is not defined by the statute or by regulation of the Illinois Department of Public Aid.

Jerome Alexander graduated from high school on August 15, 1968, four days after he reached his eighteenth birthday. On September 11, 1968 he enrolled in fourteen hours of classes for the fall semester at Wilson Junior College in Chicago. Without express regulations to the contrary, we think this constitutes full time attendance. On October 4, 1968 defendant Mae Withers, superintendent of the Woodlawn District Office of the Cook County Department of Public Aid, acting pursuant to section 4–1.1 and Illinois Department of Public Aid Regulation 150 withdrew A.F.D.C. benefits to Jerome Alexander and his mother, Loverta Alexander. Defendants admit that the sole ground for withdrawing benefits to plaintiffs was the fact that Jerome was over eighteen and not attending high school or vocational school. Thus defendants' action on October 4, 1968 injured plaintiffs and pro-

vided them with standing to challenge the validity of section 4–1.1.

Omega Minor graduated from high school in August 1966. In September 1966 she enrolled at Southeast Junior College in courses providing thirteen hours credit. We believe that this is sufficient to constitute attendance full time within the meaning of section 4–1.1. On December 19, 1966 Omega Minor celebrated her eighteenth birthday. In January 1967, before the end of the fall term, A.F.D.C. benefits previously paid to Georgia Townsend for support of Omega were withdrawn. Again the sole reason for the cessation of benefits was plaintiff's failure to qualify for benefits under section 4–1.1. After aid was withdrawn Omega Minor continued to attend Southeast Junior College. We think the cessation of aid in January is sufficient to give plaintiff Townsend standing to challenge section 4–1.1.

■ Defendants cite numerous passages from plaintiffs' affidavits to demonstrate that plaintiffs are unsatisfactory students and that they were unwilling to perform part time work. In the absence of express regulations defining full time attendance under section 4–1.1, we think these considerations are irrelevant. With standing established we now turn to plaintiffs' substantive attacks on section 4–1.1.

*I.  Is section 4–1.1 consistent with the Social Security Act?*

■■ In 1935 Congress enacted Title IV of the Social Security Act, 42 U.S.C. §§ 601 to 644, as a federal grant-in-aid program designed to provide funds to states which establish Aid to Dependent Children Programs.[4] Section 406(a) of that title defines the class of dependent children for whom federal matching funds are available. A dependent child according to 406(a) (2) includes a child who is under eighteen or between eighteen and twenty-one years of age and a student regularly attending secondary school, college, or a course of vocational or technical training. Plaintiffs argue that states must adopt this definition in determining which persons are eligible for benefits under their own A.F.D.C. programs. We disagree.

The primary purposes of Title IV of the Social Security Act were expressed by Congress in section 401, 42 U.S.C. § 601 as follows:

> For the purpose of encouraging the care of dependent children in their own homes or in the homes of relatives by enabling each State to furnish financial assistance and rehabilitation and other services, as far as practicable under the conditions in such State, to needy dependent children and the parents or relatives with whom they are living to help maintain and strengthen family life and to help such parents or relatives to attain or retain capability for the maximum self-support and maintenance of continuing parental care and protection, there is authorized to be appropriated for each fiscal year a sum sufficient to carry out the purposes of this part. The sums made available under this section shall be used for making payments to States which have submitted, and had approved by the Secretary, State plans for aid and services to needy families with children.

As is readily evident from this section, Congress was primarily interested in encouraging state participation in A.F.D.C. programs and not in establishing a uniform national welfare system. Variations among state programs were clearly envisioned as is evidenced by recognition that the purposes of the Act would be carried out "as far as practical under the conditions in such state." Congress insured that federal provisions and policies would be followed by providing for review of state programs by the Secretary of Health, Education and Welfare. Section 404(a), 42 U.S.C. § 604(a). The

---

4. The program was originally known as "Aid to Dependent Children." In the 1962 amendments the name was changed to "Aid and Service to Needy Families With Children."

Secretary of H.E.W. approved section 4–1.1 of the Illinois Public Aid Code on August 31, 1967. We are, nevertheless, not foreclosed from conducting our own examination to determine whether the Secretary of H.E.W. was correct in determining that section 4–1.1 is consistent with federal standards. Dandridge v. Williams, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (April 6, 1970); Rosado v. Wyman, 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (April 6, 1970).

Plaintiffs maintain that section 406 (a) (2) allows states a limited choice in defining "dependent children" but compels them to provide A.F.D.C. benefits either to all eligible children between eighteen and twenty-one who are students or to deny aid to all persons over eighteen. We disagree. In contrast to other sections in which Congress has mandated uniform standards or a choice of standards in state programs, the words of section 406(a) (2) do not expressly and unequivocally require states to incorporate the federal definition of dependent children in their own programs. Cf. section 402(a), 42 U.S.C. § 602(a), Dandridge v. Williams, supra; Rosado v. Wyman, supra.

Furthermore, the legislative history of section 406(a) (2), which was enacted as an amendment to the Social Security Act in 1965, indicates that Congress granted states considerable flexibility in extending A.F.D.C. benefits to children over eighteen years of age. We are convinced that the range of choices granted under that section is significantly greater than plaintiffs suggest. Prior to the 1965 amendment, "dependent children" in the Social Security Act was defined in a manner nearly identical to section 4–1.1 of the Illinois Public Aid Code.[5] The Senate Committee on Finance explained the purpose of the 1965 amendment as follows:

> Under existing law States, at their *option, may* continue payments to needy children *up* to age 21 in the aid to families with dependent children program, providing they are "regularly attending a high school in pursuance of a course of study leading to a high school diploma or its equivalent or regularly attending a course of vocational or technincal training designed to fit him for gainful employment." The committee added an amendment extending this provision so as to *include* needy children under 21 who are regularly "attending a school, college, or university." Federal sharing for this purpose would thus be available to States who implement such a program for payments to children regularly attending a college, or university, as well as those attending high school or a vocational school, thus bringing this provision more nearly in line with the provision of the bill relating to the continuation of a child's benefit under the OASDI system. 1965 Cong. & Admin. News, p. 2087.

The Committee report does not state or even imply that programs including provisions adopted pursuant to the 1964 amendment were invalidated by the 1965 amendment to section 402(a) (2); instead, the report strongly suggests that the purpose of the 1965 amendment was merely to extend the availability of federal matching funds for states who wished to enact provisions providing for aid to dependent children and needy college students between ages eighteen and twenty-one. Plaintiffs rely heavily upon the H.E.W. Handbook of Public Assistance, Pt. IV §§ G-3210, G-3220 (1967), to demonstrate a contrary intent. Although the Handbook offers several addi-

---

5. Prior to the 1965 amendment, section 406(a) of the Social Security Act defined a dependent child to include:

   a needy child (2) who is (A) under the age of eighteen or (B) under the age of twenty-one and * * * a student regularly attending a high school in pursuance of a course of study leading to a high school diploma or its equivalent, or regularly attending a course of vocational or technical training designed to fit him for gainful employment.

tional explanations for Congress' action, we find nothing contrary to the intent expressed in the Committee report to make the adoption of the definition contained in section 406(a) discretionary with the states. In summary, therefore, we hold that section 4–1.1 is not at variance with section 406(a) (2) of the Social Security Act.

Our holding is consistent with the Supreme Court's decision in King v. Smith, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968). That case involved Alabama's so-called substitute father regulation which denied A.F.D.C. benefits to children of a mother who "cohabits" in or outside her home with any single or married able-bodied man. The regulation had not been approved by H.E.W. The Court held that the Alabama regulation, by punishing children because of immoral acts of their mothers, operated in a fashion in direct conflict with the paramount objective of Title IV, protecting dependent and needy children. Accord, Doe v. Shapiro, 302 F.Supp. 761 (D.C.Conn., 1969). We agree with plaintiffs that permitting dependent children to complete their education is at least in part a purpose of the Social Security Act. We are of the opinion, however, that this purpose is not so central and overriding as to require us to hold that section 4–1.1 of the Illinois Public Aid Code is void under the Supremacy Clause.[6]

## II. Does section 4–1.1 violate the Equal Protection Clause?

Section 4–1.1 and Public Aid Regulation 150 create two classes of poor families with dependent children different only in that in one the dependent child attends college and in the other attends high school, vocational school, or technical training school. The latter class is entitled to A.F.D.C. benefits while the former is not. We must, therefore, determine whether classification on the basis of the type school which a dependent child attends is irrational, arbitrary, and in violation of the Equal Protection Clause of the fourteenth amendment.

The standard by which courts should determine the constitutionality of state welfare provisions under the fourteenth amendment has been a subject of considerable dispute since the Supreme Court's decision in Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969); see Rothstein v. Wyman, 303 F.Supp. 339 (S.D.N.Y.1969); Napper v. Wyman, 305 F.Supp 429 (S.D.N.Y. 1969). In *Shapiro* the Court intimated, without deciding, that the states must demonstrate a "compelling state interest" to sustain state welfare statutes since legislative classifications may deny recipients "food, shelter, and other necessities of life," *Shapiro, supra*, 394 U.S. at 627, 89 S.Ct. at 1327. We believe that the appropriate standard has been conclusively determined, however, in the recent case of Dandridge v. Williams, 397 U.S. 471, 90 S.Ct. 1153 (April 6, 1970).

In that case the Court was asked to determine whether a Maryland statute imposing an upper limit on the total amount of welfare benefits which any one family may receive violated the fourteenth amendment. In upholding the provision the Court commented as follows:

[H]ere we deal with state regulation in the social and economic field, not affecting freedoms guaranteed by the Bill of Rights, and claimed to violate the Fourteenth Amendment only because the regulation results in some disparity in grants of welfare payments to the largest AFDC families. For this Court to approve the invalidation of state economic or social regulation as "overreaching" would be far too reminiscent of an era when the Court thought the Fourteenth Amend-

---

6. Our holding is also consistent with Rosado v. Wyman, *supra*. In that case the New York legislature altered its benefits in a manner directly in conflict with the Congressional purposes in enacting sec-

tion 402(a) (23), 42 U.S.C. § 602(a) (23), a provision expressly requiring uniformity of standards in state programs.

ment gave it power to strike down state laws "because they may be unwise, improvident, or out of harmony with a particular school of thought." Williamson v. Lee Optical Co., 348 U.S. 483, 488, 75 S.Ct. 461, 464, 99 L.Ed. 563. That era long ago passed into history. Ferguson v. Skrupa, 372 U.S. 726, 83 S.Ct. 1028, 10 L.Ed.2d 93.

In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some "reasonable basis," it does not offend the Constitution simply because the classification "is not made with mathematical nicety or because in practice it results in some inequality." Lindsley v. Natural Carbonic Gas Co., 220 U.S. 61, 78, 31 S.Ct. 337, 340, 55 L.Ed. 369. "The problems of government are practical ones and may justify, if they do not require, rough accommodations–illogical, it may be, and unscientific." Metropolis Theatre Co. v. City of Chicago, 228 U.S. 61, 69–70, 33 S.Ct. 441, 443, 57 L.Ed. 730. "A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it." McGowan v. Maryland, 366 U.S. 420, 426, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393.

To be sure, the cases cited, and many others enunciating this fundamental standard under the Equal Protection Clause, have in the main involved state regulation of business or industry. The administration of public welfare assistance, by contrast, involves the most basic economic needs of impoverished human beings. We recognize the dramatically real factual difference between the cited cases and this one, but we can find no basis for applying a different constitutional standard. See Snell v. Wyman, D.C., 281 F.Supp. 853, aff'd, 393 U.S. 323, 89 S.Ct. 553, 21 L.Ed.2d 511. It is a standard that has consistently been applied to state legislation restricting the availability of employment opportuni-

ties. Goesaert v. Cleary, 335 U.S. 464, 69 S.Ct. 198, 93 L.Ed. 163; Kotch v. Board of River Port Pilot Com'rs, 330 U.S. 552, 67 S.Ct. 910, 91 L.Ed. 1093. See also Flemming v. Nestor, 363 U.S. 603, 80 S.Ct. 1367, 4 L.Ed.2d 1435, And it is a standard that is true to the principle that the Fourteenth Amendment gives the federal courts no power to impose upon the States their views of wise economic or social policy. Dandridge v. Williams, 397 U.S. 471, 484, 90 S.Ct. 1153, 1161. (footnotes omitted.)

When this standard is applied we find that section 4–1.1 is constitutional.

Defendants maintain that section 4–1 is designed primarily to permit dependent children to obtain sufficient education to become employable. They argue that special benefits to needy children in high school or vocational school are justified since "persons over 18 who are still in high school are educationally slow, and persons in vocational schools, generally speaking, are not on an intellectual par with other students are less able to presently support themselves." The overall purpose of the enactment is to conserve state funds and to promote governmental economy.

The limited nature of our review compels us to uphold section 4–1.1. It is undisputed that the twin goals of aiding needy children to become employable and of insuring fiscal integrity of state welfare programs are legitimate state interests. And, although we are inclined to question the wisdom of extending aid only to high school or vocational school students, we agree that there is a rational connection between these legislative objectives and the classifications contained in section 4–1.1.

Accordingly, the relief requested by plaintiffs must be denied.

MAROVITZ, District Judge (concurring):

I concur in all respects to Chief Judge Swygert's opinion as it refers to the procedural issues of jurisdiction and stand-

ing and the substantive issue of the compatability of the challenged state statute with the federal supremacy clause. I also concur with his holding on the equal protection issue, but feel that a further exploration of that aspect of the case might be appropriate.

The Fourteenth Amendment prohibits any state from denying "the equal protection of the laws" to "any person within its jurisdiction * * *." The original understanding of the scope and extent of the equal protection guarantee was never very clear. Developments in the Law—Equal Protection, 82 Harv.L. Rev. 1065, 1068–69 (1969). Over a century of experience with the principle has not resulted in either a definitive characterization of what the Constitution seeks to protect equally or even a firm standard to assist the judiciary in dealing with the many and varied problems which are presented to it. The instant case, for example, is made all the more difficult because one side wants the facts weighed under a "compelling state interest" test, while the other side has urged the "reasonable classification" guideline.

Under our Constitution, the states are not prohibited from distinguishing between or classifying citizens for different treatment, but, traditionally, "the classification must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike." F. S. Royster Guano Co. v. Virginia, 253 U.S. 412, 415, 40 S.Ct. 560, 561, 64 L.Ed. 989 (1920); accord, Dandridge v. Williams, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (April 6, 1970); Avery v. Midland, 390 U.S. 474, 484, 88 S.Ct. 1114, 20 L.Ed.2d 45 (1968). There is no dispute about the fact that the Illinois statute, Ill.Rev.Stat. Ch. 23, § 4–1.1, makes a clear distinction between one person, age eighteen through twenty attending a vocational or technical training school and another person in the same age bracket and financial condition with the same family background, but who attends a college or university. The question is whether or not the different treatment afforded these two persons is grounded on a reasonable or rational basis and, therefore, constitutional or is so arbitrary and invidious as to be unconstitutional.

Essentially, the Illinois law is designed to provide financial support to economically deprived youth in order to permit them to become employable and self-sufficient. I have no difficulty at all with the statute so far as it permits a person otherwise qualified and over 18 to receive financial support until that person completes his or her secondary school education. The importance of a high school diploma to a job seeker cannot be overestimated and the equal protection clause is not violated when a state supports some persons past the demarcation line (the eighteenth birthday) if that person needs extra time in order to complete the high school program. See Developments in the Law—Equal Protection, 82 Harv.L.Rev. 1065, 1166–69 (1969). Nor am I much troubled by vocational training which is in lieu of high school education.

In my view, however, a serious difficulty arises when the statutory discrimination operates at the post-high school level. The state has asserted that persons enrolled in vocational training programs are intellectually inferior to those in college, but there is no documentation before us to indicate that such is uniformly or even generally true. Conversely it may, arguably, be said that there are some persons in college who lack the physical aptitude, coordination, and mechanical ability of vocational students. For instance, a person may be suited by talent and temperament to be an excellent poet or attorney, but not an automobile mechanic or television repairman. In this sense, he could only become economically self-sufficient with a college education, just, as the state contends, another person can only become employable through advanced vocational training.

If all factors in the national or local employment situation were equal, that is, if incentives to learn white and blue collar trades and the supply and demand for professional and labor positions were the same, the reasonable basis for the statutory distinction would not be apparent. However, the skills of manual laborers are in short supply. See "Why manual jobs go begging," Chicago Daily News, April 13, 1970, at 41, cols. 4–8. Evaluated as a means of utilizing limited state funds in an effort to channel persons into those employment positions for which the society has great need, the statutory discrimination between college students and post-high school vocational trainees is not purely arbitrary or invidious, but rather, a rational approach designed to correct a perceived problem. Certainly, the statutory scheme is grounded in a more realistic basis than other situations where the judiciary has invoked its imaginative powers to justify state action. See, e. g., Kotch v. Board of River Port Comm'rs, 330 U.S. 552, 67 S.Ct. 910, 91 L.Ed. 1093 (1947).

In benefiting post-high school but not college students who are otherwise qualified, the Illinois approach is one of "under-inclusion." See Developments in the Law—Equal Protection, 82 Harv.L.Rev. 1065, 1084–86 (1969). The *Dandridge* case, 397 U.S. at 488–489, 90 S.Ct. at 1163–1164 is the most recent in a long line of Supreme Court decisions which, essentially, have held that under-inclusion which results from a state's attempt to do what it can within its means does not result in a denial of equal protection. See also, Williamson v. Lee Optical, Inc., 348 U.S. 483, 489, 75 S.Ct. 461, 99 L.Ed. 563 (1955); Buck v. Bell, 274 U.S. 200, 208, 47 S.Ct. 584, 71 L.Ed. 1000 (1927); Linsley v. Natural Carbonic Gas Co., 220 U.S. 61, 78–79, 31 S.Ct. 337, 55 L.Ed. 369 (1911).

Plaintiffs have also suggested that the Illinois law, besides generally discriminating against brains in favor of brawn, would also discriminate between persons who pursue the same profession, but in different ways. For example, a girl en-rolled in a nurses' training course would be eligible for welfare support, but one attending college and majoring in nursing would not so qualify. Under *Dandridge*, 397 U.S. at 483, 90 S.Ct. at 1161, however, we cannot say that this theoretical imperfection amounts to a denial of equal protection or makes the Illinois statute unconstitutional.

As to the wisdom of the Illinois law, we make no comment. It is incumbent upon the judiciary to avoid the pitfalls similar to those in a substantive due process analysis. See L.Hand, The Bill of Rights 70–72 (Atheneum ed. 1964). We can only repeat what Mr. Justice Cardozo said in another context:

> "Whether wisdom or unwisdom resides in the scheme of benefits set forth * * * is not for us to say. The answer to such inquiries must come from (the legislature), not the courts. Our concern here, as often, is with power, not with wisdom."

Helvering v. Davis, 301 U.S. 619, 644, 57 S.Ct. 904, 81 L.Ed. 1307 (1937).

Having decided that Illinois has not violated the supremacy clause or denied plaintiffs the equal protection of the laws, our opinion ends.