547 F.2d 994
 Richard A. FRENCH et al., Plaintiffs-Appellants,
v.
Robert E. HEYNE, Individually and in his official capacity
as Commissioner of the Indiana Department of
Correction, et al., Defendants-Appellees.
 No. 75-1883.
 United States Court of Appeals,
Seventh Circuit.
 Argued June 11, 1976.
Decided Dec. 22, 1976.
 
 Jerold S. Solovy, Barry Sullivan, Chicago, Ill., for plaintiffs-appellants.
 Theodore L. Sendak, Atty. Gen., Thomas J. Campbell, Deputy Atty. Gen., Indianapolis, Ind., for defendants-appellees.
 Before SWYGERT, SPRECHER and WOOD, Circuit Judges.
 WOOD, Circuit Judge.
 
 
 1
 This appeal is from an order dismissing for failure to state a claim upon which relief can be granted a pro se petition filed under 42 U.S.C. § 1983 by several inmates presently incarcerated at the Indiana State Reformatory in Pendleton, Indiana. The petition alleges that conditions at the reformatory are violative of plaintiffs' rights under the First, Eighth and Fourteenth Amendments of the United States Constitution. Specifically plaintiffs allege that: 1) educational programs at the reformatory are obsolete, defective, and do not reform or rehabilitate; 2) vocational training programs at the reformatory are offered only to those inmates with short indeterminate sentences, and are never provided to inmates with longer indeterminate and determinate sentences; 3) instructors and teachers offer only compulsory assistance, and that only inmates who already possess self-motivation learn from the program; 4) in-classroom experience and instruction is almost non-existent; 5) educational programs are made available to those who do not already possess high school degrees but are not available to those with high school degrees; 6) vocational programs are available to those who do not already possess a vocational trade, and those who already possess a vocational trade are denied participation in vocational programs; 7) inmates at the reformatory are prohibited from soliciting funds from interested corporations and individuals for educational programs; 8) a study release program was discontinued for no good reason; and 9) veterans are denied use of their benefits due to the lack of educational programs.
 
 
 2
 In its order dismissing the complaint the district court held that decisions by state administrators regarding educational services do not raise federal constitutional questions or constitute proper subjects for relief under § 1983. See United States ex rel. Cleggett v. Pate, 229 F.Supp. 818 (N.D.Ill.1964). Because we believe this broad holding is insufficient to dispose of all of plaintiffs' claims, we affirm in part, and vacate and remand in part with instructions, the judgment entered below.[1]
 
 
 3
 We approach the questions raised in this appeal mindful that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). Equally applicable here is the admonition that pro se complaints, due to the lack of legal expertise that accompanies their preparation, are to be liberally construed. Haines v. Kerner, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).
 
 EQUAL PROTECTION
 
 4
 Plaintiffs submit that the allegations regarding the limitation of vocational training programs to those prisoners with short indeterminate sentences and the denial of any vocational or educational programs to those inmates who already possess a vocational trade or high school degree are sufficient to state a claim for violation of the Equal Protection Clause. Defendants' answer to this argument is threefold. First, defendants contend that because there exists no constitutional right to education or rehabilitation, see San Antonio Independent School District v. Rodriquez, 411 U.S. 1, 35, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973); James v. Wallace, 382 F.Supp. 1177, 1180 (M.D.Ala.1974), any alleged deprivation to plaintiffs of programs of rehabilitation and education by virtue of the creation of such programs for other prisoners does not constitute a deprivation of a right secured by the Constitution as required by § 1983. Secondly, defendants urge that with respect to the limitation of vocational training to those prisoners with short indeterminate sentences, the classification on its face appears to be rational so as to eliminate the necessity for any further inquiry into a rational basis. Third, with regard to the absence of rehabilitative and educational programs for those prisoners with a high school degree or a vocational skill, defendants suggest that because in a nonprison setting the state's refusal to provide free college education while providing free high school education is not actionable under § 1983, plaintiffs' claim must likewise fail.
 
 
 5
 It is well settled that equal protection does not require absolute equality or precisely equal advantages. Ross v. Moffitt, 417 U.S. 600, 94 S.Ct. 2437, 41 L.Ed.2d 341 (1974). Rather, in the absence of fundamental rights or a suspect classification, equal protection requires only that a classification which results in unequal treatment bear some rational relationship to a legitimate state purpose. Wojick v. Levitt, 513 F.2d 725 (7th Cir. 1975).[2] The requirements of the equal protection clause apply to administrative as well as legislative classifications. See Buckley v. Coyle Public School Systems, 476 F.2d 92 (10th Cir. 1973). Redress for denial of equal protection is available under § 1983. See e. g., Lindsey v. Normet,405 U.S. 56, 92 S.Ct. 862, 31 L.Ed.2d 36 (1972); United States ex rel. Campbell v. Pate, 401 F.2d 55, 57 (7th Cir. 1968).
 
 
 6
 Defendants' contention that equal protection is violated only when a classification deprives a group of rights otherwise secured by the Constitution is erroneous. An examination of equal protection cases reveals that although the involvement of certain fundamental rights invokes the more stringent "compelling interest" test it is by no means essential that the benefits deprived or burdens bestowed by the different treatment be otherwise guaranteed by the Constitution. See, e. g., James v. Strange, 407 U.S. 128, 92 S.Ct. 2027, 32 L.Ed.2d 600 (1972) (exemptions otherwise available to civil judgment debtors disallowed to indigent defendants from whom legal defense fees could be recovered in subsequent civil proceedings); Lindsey v. Normet, 405 U.S. 56, 92 S.Ct. 862, 31 L.Ed.2d 36 (1972) (early trial date and double bond for appeal required by forcible entry and detainer statute); Schilb v. Kuebel, 404 U.S. 357, 92 S.Ct. 479, 30 L.Ed.2d 502 (1971) (retention by state of 1% of amount of bail while no such charge levied on those released on personal recognizance); Dandridge v. Williams, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970) (limit on amount of welfare benefits alleged to operate against families merely because of size). This is clearly demonstrated in San Antonio Independent School District, supra, relied upon by defendants, where the Court, after determining that education is not a right guaranteed by the Constitution, 411 U.S. at 35, 93 S.Ct. 1278, nonetheless examined the Texas school-financing system and determined that the statute rationally furthered a legitimate state purpose. 411 U.S. at 55, 93 S.Ct. 1278. Furthermore, although some equal protection claims by prison inmates have involved the denial of rights otherwise secured by the Constitution, see, e. g., Cooper v. Pate, 378 U.S. 546, 84 S.Ct. 1733, 12 L.Ed.2d 1030 (1964), prisoner claims do not form an exception to the general rule.
 
 
 7
 In McGinnis v. Royster, 410 U.S. 263, 93 S.Ct. 1055, 35 L.Ed.2d 282 (1973), state prisoners challenged as violative of equal protection a New York statute that granted good time credit for the entire period of incarceration to prisoners who were released on bail prior to sentencing, but denied good time credit for time spent in county jails prior to sentencing to those prisoners who could not post bail. Without considering whether plaintiffs possessed a constitutional right to good time credit[3] the Court stated:
 
 
 8
 We do not wish to inhibit state experimental classifications in a practical and troublesome area, but inquire only whether the challenged distinction rationally furthers some legitimate, articulated state purpose. McGinnis, supra, at 270, 93 S.Ct. at 1059.
 
 
 9
 Defendants' assertion that the distinction drawn between prisoners with short indeterminate sentences and those with longer indeterminate and determinate sentences is rational on its face and therefore warranted dismissal is also without merit.[4] The Supreme Court has on many occasions stated that where reform measures are involved, a state need not choose between curing all evils or none, Dandridge v. Williams, 397 U.S. 471, 486-487, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970); Williamson v. Lee Optical, 348 U.S. 483, 489, 75 S.Ct. 461, 99 L.Ed. 263 (1955), and that the courts will not impose their judgment as to the appropriate stopping point of remedial measures so long as the line drawn by the state is rationally supportable. Geduldig v. Aiello,417 U.S. 484, 495, 94 S.Ct. 2485, 41 L.Ed.2d 256 (1974). In McGowan v. Maryland, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961), several employees of a discount department store prohibited from doing business on Sunday by a state Sunday Closing Law, challenged the statute on equal protection grounds. At 366 U.S. 426, 81 S.Ct. 1105 the Court stated that "(a) statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it." After considering several possible reasons that could have prompted the statutory classification, the Court added that "the record is barren of any indication that this apparently reasonable basis does not exist . . ." and that the statutes were not violative of equal protection "since there would appear many valid reasons for these exemptions, . . . and no evidence to dispel them." 366 U.S. at 427, 81 S.Ct. at 1105.
 
 
 10
 We note first that there has been no investigation into the purpose for limiting vocational rehabilitation to prisoners with short indeterminate sentences in this litigation. Nor have we found, and the parties have not brought to our attention, any cases from the Indiana courts explaining the basis for the distinction or deciding the question of its rationality. Indeed, defendants suggest that to require a showing that a rational basis exists for awarding vocational training to inmates based upon the date of their release into society would be an exercise of frivolity. We might surmise that defendants are operating with a severely limited budget and accordingly concentrated their vocational training programs to benefit that class of prisoners who could derive the most benefit. It is equally possible, however, that defendants have concluded that prisoners with determinate and long term indeterminate sentences are not likely to derive any benefit at all from vocational training and will therefore not be provided with such programs, or that defendants are withholding such benefits as additional penalty for incurring harsher sentences. We cannot agree, therefore, that a rational basis for the classification with regard to vocational programs is apparent on the face of the classification itself. In the absence of an articulated purpose for the distinctions drawn here, we cannot indulge in supplying an imaginary purpose or basis for the classification, McGinnis, supra, 410 U.S. at 277, 93 S.Ct. 1055, and thereby preclude plaintiffs from showing that such an "apparent" basis does not actually exist. McGowan, supra, 366 U.S. at 427, 81 S.Ct. 1101. In this appeal the question is not whether plaintiffs will ultimately succeed in proving their claim that the classification by defendants lacks a rational basis, but rather whether or not plaintiffs are entitled to present evidence in support of their claim. Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).
 
 
 11
 Defendants' third argument must be rejected because it is based upon a faulty premise. In Townsend v. Swank, 404 U.S. 282, 92 S.Ct. 502, 30 L.Ed.2d 448 (1971), needy children between the ages of 18 and 21 who were attending college challenged on equal protection grounds an Illinois public aid statute that provided aid only to those needy children between 18 and 21 who attended high school, vocational school or technical school. The lower court explicitly stated that the complaint stated a cause of action under 42 U.S.C. § 1983, Alexander v. Swank, 314 F.Supp. 1082, 1085 (N.D.Ill.1970), rev'd on other grounds, sub nom. Townsend v. Swank, 404 U.S. 282, 92 S.Ct. 502, 30 L.Ed.2d 448 (1971), and held that the classification was not repugnant to equal protection. The Supreme Court, reversing on other grounds and finding it unnecessary to rule on the equal protection claim, nonetheless doubted the rationality of the classification. Townsend, supra, 404 U.S. at 291, 92 S.Ct. 502. We discern no meaningful difference with respect to stating a claim under § 1983 between the failure to provide welfare benefits based on the level of education sought, and the failure to provide educational or rehabilitative programs based on the same criteria.
 
 FREEDOM OF SPEECH
 
 12
 Plaintiffs contend that by prohibiting them from soliciting funds for the implementation of educational studies defendants are violating plaintiffs' right of free speech as guaranteed by the First Amendment.[5] We think that in a nonprisoner context the First Amendment would protect such solicitation. Although some decisions have recognized that the difference between the expression of ideas and solicitation for their support or implementation allows the state to impose certain restrictions on solicitation so long as they do not interfere with the content of expression, the presence of such considerations that justify those restrictions, e. g., fraud, have not been raised here. See generally Hynes v. The Mayor and Council of the Borough of Oradell, 425 U.S. 610, 620, n.4, 96 S.Ct. 1755, 48 L.Ed.2d 243 (1976), (Brennan, J., concurring), and cases cited therein.[6] Moreover, the imposition of a standard of reasonableness to such restrictions suggests that at least some degree of First Amendment protection is afforded the solicitation of funds in connection with the expression of ideas. See Thomas v. Collins, 323 U.S. 516, 540, 65 S.Ct. 315, 89 L.Ed. 430 (1945); see also New York Times v. Sullivan, 376 U.S. 254, 266, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964); Biglow v. Virginia, 421 U.S. 809, 818, 95 S.Ct. 2222, 44 L.Ed.2d 600 (1975); cf. Katz v. McAulray, 438 F.2d 1058 (2d Cir. 1971), cert. denied, 405 U.S. 933, 92 S.Ct. 930, 30 L.Ed.2d 809. We turn, therefore, to the application of this right to the peculiar context of prisons, aware that the unique problems of administration may warrant deference to prison authorities, but equally cautious that "a policy of judicial restraint cannot encompass any failure to take cognizance of valid constitutional claims whether arising in a federal or state institution." Procunier v. Martinez, 416 U.S. 396, 405, 94 S.Ct. 1800, 1807, 40 L.Ed.2d 224 (1974).
 
 
 13
 It is now well settled that although upon incarceration a prisoner loses many rights and privileges, Price v. Johnston, 334 U.S. 266, 285, 68 S.Ct. 1049, 92 L.Ed. 1356 (1948), the loss is not complete. In Pell v. Procunier, 417 U.S. 817, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974), the Supreme Court articulated guidelines for determining the extent to which First Amendment rights survive incarceration:[7]
 
 
 14
 "(A) prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system. Thus, challenges to prison restrictions that are asserted to inhibit First Amendment interests must be analyzed in terms of the legitimate policies and goals of the corrections system . . . ." 417 U.S. at 822, 94 S.Ct. at 2804.
 
 
 15
 Defendants assert categorically that solicitation by plaintiffs of funds for educational programs is inconsistent with plaintiffs' status as prisoners and therefore does not fall within the ambit of those First Amendment rights retained by prisoners. The analysis applied in prior cases involving restrictions on First Amendment interests, however, militates against our adoption of this unsupported proposition.
 
 
 16
 In Pell v. Procunier, supra, the Court reversed a three-judge district court holding that invalidated as violative of the prisoners' First Amendment freedoms a regulation prohibiting inmates from face-to-face communication with journalists. Proceeding with the hypothesis that "(U)nder some circumstances the right of free speech includes the right to communicate a person's views to any willing listener . . ." Pell v. Procunier, supra, at 822, 94 S.Ct. at 2804, the Court concluded that the regulation was valid only after balancing the First Amendment right in question against the legitimate governmental interests of crime deterrence, rehabilitation, and security. Pell v. Procunier, supra, at 823, 824, 94 S.Ct. 2800. This court in a recent case invalidating as overbroad certain regulations that restricted prisoners' access to published materials stated unequivocally that "The burden of showing such special characteristics justifying restrictions on First Amendment rights is on those who seek to impose the restrictions." Aikens v. Jenkins, 534 F.2d 751, 755 (7th Cir. 1976).
 
 
 17
 Neither the asserted inconsistency between plaintiffs' solicitation of funds and their status as prisoners, nor potential interference with prison administration which we can at this time only conjecture might result from allowing such solicitation, is so striking as to relieve defendants from their burden of justifying the challenged restriction or this court from its duty to balance the respective interests at hand.[8] Upon remand defendants may well be able to demonstrate that the prohibition against solicitation by plaintiffs is justified by legitimate penological objectives. We cannot, however, on this record alone, hold that there is no set of facts which would entitle plaintiffs to relief under § 1983. Insofar as defendants contend "not that the regulations are justified by a legitimate governmental interest but that they do not need to be", Procunier v. Martinez, supra, 416 U.S. at 415, 94 S.Ct. at 1812, that contention must be rejected.
 
 
 18
 Although defendants do not urge this point on appeal, the district court rejected the plaintiffs' First Amendment claim on grounds that prisoners possess no constitutionally protected right to educational programs. The extent to which First Amendment rights are retained by prison inmates is not, however, necessarily limited to those instances where the content of speech is related to a separate constitutionally protected area. It is true that the courts have given special consideration to practices involving religious correspondence,[9] correspondence with lawyers, courts, public officials, and the press,[10] and correspondence restricted because of race.[11] This court has recognized, however, that First Amendment rights of prisoners may exist independent of those areas traditionally accorded special protection because of the subject matter of the correspondence or the identity of the correspondent. See Morales v. Schmidt, 494 F.2d 85, 87 (7th Cir. 1974) (en banc decision); Aikens v. Jenkins, supra, at 755; see also Comment, Prisoners' First Amendment Rights, 70 Nw.U.L.Rev. 352, 353-356 (1975); Note, Prison Mail Censorship and the First Amendment, 81 Yale L.J. 87 (1971). While solicitation of money for such purposes as escape or criminal enterprise would clearly be impermissible as contrary to legitimate penological objectives, we find no reason to excuse prison officials from their burden of justifying First Amendment restrictions where solicitation is not for an illegal purpose and the ends sought through such solicitation would serve to further a recognized, albeit not constitutionally required, penological goal. Martinez, supra, 416 U.S. at 416, 94 S.Ct. 1800. Cf. Butler v. Preisser, 380 F.Supp. 612, 622 (S.D.N.Y.1974); North Carolina Prisoners' Labor Union, Inc. v. Jones, 409 F.Supp. 937, 944 (E.D.N.C.1976), cert. granted, --- U.S. ----, 97 S.Ct. ----, 50 L.Ed.2d --- (1976). Accordingly, we hold that plaintiffs have stated a claim for violation of the First Amendment cognizable under 42 U.S.C. § 1983 and that defendants are required to meet those standards enunciated in Procunier v. Martinez, 416 U.S. at 413, 94 S.Ct. 1800, for justifying the prohibition against solicitation by plaintiffs of funds for educational programs.[12]
 
 CRUEL AND UNUSUAL PUNISHMENT
 
 19
 Plaintiffs argue that the totality of conditions at the reformatory as described in their complaint are so counter-rehabilitative that they constitute cruel and unusual punishment. Specifically it is alleged that existing programs and facilities are obsolete; that a study release program has been discontinued for no apparent reason other than security; that veterans who have already finished high school are denied the opportunity to take full advantage of G.I. or V.A. benefits; that the educational and rehabilitative benefits that do exist are allocated unfairly; and that their First Amendment rights are violated by denying them the right to solicit funds for prison programs.
 
 
 20
 Plaintiffs concede that prisoners possess no abstract right to rehabilitation and that the failure to provide rehabilitative programs does not constitute cruel and unusual punishment in the absence of other infirmities. McCray v. Sullivan, 509 F.2d 1332, 1335 (5th Cir. 1975), cert. denied, 423 U.S. 859, 96 S.Ct. 114, 46 L.Ed.2d 86. Relying upon Pugh v. Locke, 406 F.Supp. 318 (M.D.Ala.1976), and Finney v. Arkansas Board of Correction, 505 F.2d 194 (8th Cir. 1974), plaintiffs urge that such "other infirmities" are present at the reformatory. Significant differences that exist between the conditions alleged here and the conditions found to exist by the courts in those cases, however, support our rejection of plaintiffs' Eighth Amendment claim. In Pugh, supra, at 329, the court noted that the absence of rehabilitative programs and the allocation of existing benefits without any rational basis were accompanied by dirty and overcrowded conditions. The court in Finney, supra, at 209, found that the prison system not only lacked significant rehabilitative programs, but that convicts were forced to labor long hours under arduous conditions, that they were faced with constant threats of physical and mental abuse if their work or conduct fell below often arbitrary standards, and that they were left almost no time for self-improving activities or recreation. Although rehabilitation has been recognized as one of the ends of confinement, see, e. g., Procunier v. Martinez, supra, 416 U.S. at 412-413, 94 S.Ct. 1800, we cannot say that the lack of rehabilitative programs in this case, even when coupled with those conditions alleged to exist at the reformatory, establish that ". . . the actions of the defendants intentionally inflicted excessive or grossly severe punishment . . . or that conditions so harsh as to shock the general conscience were knowingly maintained." LaBatt v. Twomey, 513 F.2d 641, 648 (7th Cir. 1975). Accordingly we hold that the allegations set forth in plaintiffs' complaint fail to state a claim for violation of the Eighth Amendment.
 
 CONCLUSION
 
 21
 For the foregoing reasons, the dismissal of plaintiffs' complaint for failure to state a claim upon which relief can be granted is hereby vacated as it relates to plaintiffs' claims under the First Amendment and under the Fourteenth Amendment, and this cause is remanded for proceedings not inconsistent with this opinion respecting those claims. The dismissal of plaintiffs' claim under the Eighth Amendment is affirmed.
 
 
 22
 Affirmed in part. Vacated and remanded in part with instructions.
 
 
 
 [1]
 This lawsuit was filed as a class action seeking $100 in monetary damages as well as injunctive and declaratory relief. No determination regarding the propriety of the class was made below
 
 
 [2]
 Neither party suggests that fundamental constitutional rights are at stake here, or that the plaintiffs are members of a suspect class so as to invoke the compelling state interest test
 
 
 [3]
 Nor did the Court consider whether or not the good time credits constituted a "right" or "grievous loss" as required to invoke procedural due process. See generally, Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); Holmes v. United States Board of Parole, et al., 541 F.2d 1243 (7th Cir. 1976)
 
 
 [4]
 Although defendants have not relied on any statutory authority in their motion to dismiss or their briefs before this court, the relevant Indiana statute here, cited in plaintiffs' response to defendants' motion to dismiss, provides:
 11-1-1.1-26 (13-2526). Human relations education of prisoners. The director of the division of classification and treatment shall supervise in each correctional institution a program of human relations and of prison education designed in the broadest sense to bring about the rehabilitation of the inmates. The objective of these programs shall be the return of the inmates to society with a more wholesome attitude toward living and with a desire to support themselves and their dependents through honest labor. To this end, each inmate shall be given a program of education which is deemed most likely to further the process of rehabilitation and each staff member in contact with inmates shall be instructed in human relations. The time devoted daily to education shall be as much as is required for meeting the above objectives. (IC 1971, 11-1-1.1-26, as added by Acts 1971, P.L. 152, § 1, p. 632.)
 We are not called upon here to decide whether this particular statute requires defendants to provide each inmate with a program of education as plaintiffs suggested in the district court. We do note, however, that a mere violation of state statute does not constitute a violation of the Federal Constitution. Snowden v. Hughes, 321 U.S. 1, 11, 64 S.Ct. 397, 88 L.Ed. 497 (1944).
 
 
 [5]
 Indiana statute provides:
 The director of classification and treatment, subject to the direction of the commissioner, and after consultation with the state superintendent of public instruction, shall develop the curricula and educational programs which are required to meet the needs of each institution within the department. The board of corrections may apply for and receive program grants from public and private sources. IC 11-1-1.1-27 (1971) (Burns Indiana Statutes § 13-2527).
 
 
 [6]
 Defendants do not contend that such possibilities justify the regulation, but rather that they are not required to justify the regulation. In any event, there is nothing in this record to suggest the occurrence of such dangers. See North Carolina Prisoners' Labor Union, Inc. v. Jones, 409 F.Supp. 937, 944-945 (E.D.N.C.1976), cert. granted, --- U.S. ----, 97 S.Ct. ----, 50 L.Ed.2d --- (1976); Butler v. Preisser, 380 F.Supp. 612, 614 (S.D.N.Y.1974); cf. Paka v. Manson, 387 F.Supp. 111, 123 n.19 (Conn.1974)
 
 
 [7]
 We do not think that the solicitation desired by plaintiffs here may be characterized as "direct personal correspondence between inmates and those who have a particularized interest in communicating with them," Procunier v. Martinez, 416 U.S. 396, 408, 94 S.Ct. 1800, 1809, 40 L.Ed.2d 224 (1974), in which the "interests of both parties are inextricably meshed." Id. at 409, 94 S.Ct. at 1809. Thus, the First Amendment rights in question here involve those of plaintiffs and not those of possible correspondents. Id
 
 
 [8]
 While prisoners clearly do not possess the right to take part in the decision making process necessary to effectuate the educational programs they desire, the solicitation of funds should not be equated with participation in the decision to institute or decline to institute those programs. To the extent that the delegation of power to the board of corrections "(to) apply for and receive program grants from public and private sources" may be asserted to preempt plaintiffs' First Amendment rights, Martinez requires some showing justifying such preemption
 
 
 [9]
 See, e. g., Cruz v. Beto, 405 U.S. 319, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972); Cooper v. Pate, 378 U.S. 546, 84 S.Ct. 1733, 12 L.Ed.2d 1030 (1964); Brown v. Peyton, 437 F.2d 1228 (4th Cir. 1971); Walker v. Blackwell, 411 F.2d 23 (5th Cir. 1969); Long v. Parker, 390 F.2d 816 (3rd Cir. 1968)
 
 
 [10]
 See, e. g., Bach v. People of the State of Illinois, 504 F.2d 1100 (7th Cir. 1974), cert. denied, 418 U.S. 910, 94 S.Ct. 3202, 41 L.Ed.2d 1156; Taylor v. Sterrett, 532 F.2d 462 (5th Cir. 1976); Martin v. Wainwright, 526 F.2d 938 (5th Cir. 1976); Gates v. Collier, 501 F.2d 1291 (5th Cir. 1974); Sostre v. McGinnis, 442 F.2d 178 (2d Cir. 1971), cert. denied, 404 U.S. 1049, 92 S.Ct. 719, 30 L.Ed.2d 740 (1972); Smith v. Robbins, 454 F.2d 696 (1st Cir. 1972); Wilkinson v. Skinner, 462 F.2d 670 (2d Cir. 1972); Goodwin v. Oswald, 462 F.2d 1237 (2d Cir. 1972); Carothers v. Follette, 314 F.Supp. 1014, 1022 (S.D.N.Y.1970); Nolan v. Fitzpatrick, 451 F.2d 545 (1st Cir. 1971)
 
 
 [11]
 Jackson v. Godwin, 400 F.2d 529 (5th Cir. 1968)
 
 
 [12]
 The complaint does not contain any suggestion that plaintiffs desire to physically receive or hold, or in any way control the disposition of those funds actually contributed. We emphasize, therefore, that plaintiffs have stated a cause of action only for the prohibition against solicitation and in no way suggest that plaintiffs possess any other rights with respect to the funds