112 N.J. Super. 517 (1970)
271 A.2d 907
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
STANLEY RYDZEWSKI, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued December 14, 1970.
Decided December 21, 1970.
*519 Before Judges GOLDMANN, LEONARD and MOUNTAIN.
Mr. Robert A. Galisson, Assistant Deputy Public Defender, argued the cause for appellant (Mr. Stanley C. Van Ness, Public Defender, attorney; Mr. Edward Weisslitz, Assistant Deputy Public Defender, of counsel and on the brief).
Mr. Joseph T. Maloney, Deputy Attorney General, argued the cause for Department of Institutions and Agencies (Mr. George F. Kugler, Jr., Attorney General, attorney).
Mr. Richard A. Fiore, Assistant Prosecutor, argued the cause for respondent (Mr. Robert Dilts, Bergen County Prosecutor, attorney).
The opinion of the court was delivered by GOLDMANN, P.J.A.D.
On this appeal from a denial of his petition for post-conviction relief defendant again argues, as he did in the County Court, that the denial of his applications for classification as a "minimum security" prisoner constitutes an illegal sentence and, further, that the 3-5 and 1-2 concurrent State Prison sentences imposed for breaking and entering and for larceny were "manifestly" excessive although concededly within statutory limits.
We find no merit whatever in the claim of excessive sentence. Indeed, at the post-conviction hearing defendant said, "I am not saying that the sentence is illegal in any way. The sentence is proper." However, he believed the *520 sentence burdensome in his case, and his exposition of what he means by this points in the same direction as his claim that he was entitled to minimum security status.
Defendant argues that under N.J.S.A. 30:4-92 the State Prison Classification Committee should have classified him for minimum security employment, and that the court should so classify him and thereby reduce his sentence by 73 1/2 days, constituting the work credits he would have received had he been properly classified. The county judge held that even if that argument had merit, post-conviction relief was not the proper method of testing the administrative action of the prison officials at Rahway where defendant was incarcerated: a person aggrieved by the action of a state administrative agency should seek judicial review in the Appellate Division.
The notice of appeal recites that defendant appeals not only from the County Court's denial of his petition for post-conviction relief but from the administrative determination of the prison authorities denying him minimum security work status. The Attorney General appears solely for the purpose of appropriate response to the latter.
Defendant's appeal from the complained-of administrative action should have been brought in this court in the first instance. R. 2:2-3(a), formerly R.R. 4:88-8(a), provides that appeals may be taken to the Appellate Division as of right to review the final action of any state administrative agency or officer, except where governed by R. 4:74-1 and 8, not here applicable. We overlook defendant's lapse since the matter is now squarely before us for decision.
N.J.S.A. 30:4-92 provides:
The inmates of all correctional and charitable, hospital, relief and training institutions within the jurisdiction of the State Board shall be employed in such productive occupations as are consistent with their health, strength and mental capacity and shall receive such compensation therefor as the State Board shall determine.
Compensation for inmates of correctional institutions may be in the form of cash or remission of time from sentence or both. Such remission from the time of sentence shall not exceed 1 day for each 5 *521 days of productive occupation, but remission granted under this section shall in no way affect deductions for good behavior or provided by law.
In addition, all inmates classified as minimum security and who are considered sufficiently trustworthy to be employed in honor camps, farms or details, shall receive further remission of time from sentence at the rate of 3 days per month for the first year of such employment and 5 days per month for the second and each subsequent year of such employment.
It is the last paragraph that is the focus of defendant's classification argument.
The statute thus gives the State Board of Control full power and authority in the area of internal prison management to engage inmates in productive occupations consistent with their health, strength and mental capacity, and further, to provide such compensation therefor as in its best judgment it may determine. Cf. Harris v. Yeager, 291 F. Supp. 1015 (D.N.J. 1968) (challenge under the Federal Civil Rights Act to state prison's administrative policy of compulsory saving by inmates of their monthly earnings).
Discretion is vested in the prison officials to determine which inmates shall be classified as minimum security because "considered sufficiently trustworthy to be employed in honor camps, farms, or details," thereby entitling them to an additional remission from sentence. In the exercise of that discretionary power prison officials may consider a wide range of facts and circumstances, such as the inmate's past criminal record, his propensity for becoming involved in criminal activity, his institutional record on work assignments, disciplinary reports, adjustment to institutional programs, obedience, his capacity to work with other inmates and under authority, attitudes and any prior history of addiction to drugs.
Basic to the resolution of any proceeding seeking review of prison administrative action is the legal principle that courts will not interfere with the internal administration of the institution, absent action by the prison authorities which deprives an inmate of his constitutional rights or is clearly capricious or arbitrary. That principle, taken from *522 earlier federal cases, was adopted by this court in McBride v. McCorkle, 44 N.J. Super. 468 (1957), where plaintiff alleged that he was subjected to cruel and unusual punishment by reason of prolonged "solitary confinement" which denied him the free exercise of his religious beliefs through attendance at Mass, as prescribed by the Roman Catholic Church. We dismissed his appeal, finding that his repeated violation of prison rules merited his confinement, stating:
* * * Courts are not required to supervise the administration of prison rules and regulations and prison disciplinary procedures. To do so would effectively disrupt prison administration and contravene public policy. We do not believe the Legislature or the rules of court intended any such review or result. Such matters are left to the discretion of prison authorities so long as their conduct does not involve deprivation of the prisoner's constitutional rights and is not clearly capricious or arbitrary. The moment a man is sentenced to State Prison and received within its walls, there arises a duty on the part of the Principal Keeper to discipline him according to the practice laid down by the Board of Managers and the State Board of Control. Reasonable discretion must be accorded the Principal Keeper in discharging his duties; penal administration must be kept flexible to the circumstances of a particular case. Whether he is properly enforcing prison rules and regulations is left to the judgment of the Board of Managers, to whom he is responsible in the first instance, and of the State Board of Control ultimately.
Thus, the only situation calling for review would be one where there was presented a statement of facts which, if true, would clearly amount to arbitrary or capricious treatment of the prisoner by the Principal Keeper, or a deprivation of the prisoner's constitutional rights. Present such treatment or deprivation, uncorrected by administrative action or review, there unquestionably would be a judicial remedy. [Citations omitted] * * *. [at 477]
And see Gurczynski v. Yeager, 339 F.2d 884 (3 Cir.1964); United States ex rel. Stuart v. Yeager, 293 F. Supp. 1079 (D.N.J. 1968), aff'd 419 F.2d 126 (3 Cir.1969), cert. den. 397 U.S. 1055, 90 S.Ct. 1400, 25 L.Ed.2d 673 (1970); Ford v. Board of Managers of N.J. State Prison, 407 F.2d 937 (3 Cir.1969).
Accordingly, short of action which deprives an inmate of his constitutional rights or action which is clearly capricious or arbitrary, courts will not undertake to determine *523 what work program an inmate shall be given, this being purely a matter of prison administration. That the action of the prison authorities in not classifying defendant as a minimum security prisoner did not trespass upon his rights is fully established by his prison record. That record  a lengthy and detailed one  clearly supports the administrative determination that defendant is not "sufficiently trustworthy" to be employed in honor jobs as a minimum security inmate. It shows an extensive involvement in criminal activity since 1958, continuing use of narcotics, violation of parole in 1963, his leaving the Lexington, Ky., Federal Hospital for Narcotic Addicts and, more important than all this in deciding whether defendant was properly dealt with, his poor record of work and conduct in confinement during all three of his commitments to state institutions.
We find the prison authorities' refusal to classify defendant as a minimum security inmate not only proper but wise, and accordingly affirm.