**Stephen HLUCHAN, Plaintiff,**

v.

**William H. FAUVER, Commissioner, New Jersey Department of Correction; Robert S. Hatrak, Superintendent, Rahway State Prison; and Classification Committee at Rahway State Prison, New Jersey, Defendants.**

Civ. A. No. 78–2481.

United States District Court,
D. New Jersey.

Oct. 29, 1979.

Stephen Hluchan (58932) pro se.

John J. Degnan, Atty. Gen., of New Jersey by Elaine W. Ballai, Deputy Atty. Gen., Dept. of Law and Public Safety Division of Law, Human Services & Corrections Section, Trenton, N. J., for defendants.

OPINION

STERN, District Judge.

This *pro se* prisoner's civil rights action, brought pursuant to 42 U.S.C. § 1983, challenges the constitutionality of a New Jersey State Prison regulation which prevents state prison inmates who have been convicted of more than one "sex offense" from attaining "minimum custody status" and thus becoming eligible for certain benefits, such as work release and furlough programs. Both the plaintiff and the defendants have moved for summary judgment. After a careful review of the record, the Court concludes that there is no genuine issue as to any material fact and that summary judgment is appropriate.[1] The Court holds that the challenged regulation violates the Equal Protection Clause of the Fourteenth Amendment, by failing to define "sex offense." The regulation there-

by fails to ensure that those who are similarly situated will be similarly treated, and that there is a rational basis for denying the minimum custody status to one class of prisoners that is accorded to others.

Plaintiff Stephen Hluchan is currently confined at Rahway State Prison, serving fifteen-to-twenty years for rape and open lewdness. When he began serving his sentence in October 1976, he was placed in "maximum custody." On October 16, 1978, plaintiff filed this action, naming as defendants William H. Fauver, the Commissioner of the New Jersey Department of Correction; Robert S. Hatrak, the Superintendent of the New Jersey State Prison Rahway; and the Classification Committee at Rahway State Prison.[2] Plaintiff complains that his Fourteenth Amendment rights to due process and equal protection are violated by the operation of the New Jersey Department of Corrections' Departmental Standard 853.278, which provides in pertinent part:

An inmate with more than one sex offense in his record is ineligible for minimum custody.[3]

Under that Standard, plaintiff, whose record contains two "sex offenses," will never be considered for minimum custody. He is simply ineligible.[4]

Plaintiff seeks (1) a declaratory judgment that the State Corrections' Standard violates his constitutional rights, (2) an injunction proscribing the enforcement of Standard 853.278, and (3) his costs of suit.

I.

NEW JERSEY PRISONER CLASSIFICATION SYSTEM

The New Jersey State Prison system is maintained and operated by the New Jersey

1. The Court has considered the cross motions without oral argument, pursuant to Rule 78, Federal Rules of Civil Procedure.

2. Plaintiff named the following members of the Committee: Howard Beyer, Senior Classification Officer; Frank Landers, Chairman of the Rahway Classification Committee; David Shedses, Supervisor of Education at Rahway; and Michael Power, Supervisor of Social Work at Rahway.

3. The full text of Departmental Standard 853.-278 is set forth at p. 107, n. 9 *infra*.

4. Although plaintiff's Complaint indicates that he believes his record contains only one sex offense, his "Brief in Opposition to Defendants' Motion for Summary Judgment/Dismissal" makes clear that "he has two such convictions, rape and lewdness . . ." (Plaintiff's Brief in Opposition at 1.) The two convictions apparently arose from a single incident.

Department of Corrections, N.J.S.A. 30:1B–8, which is headed by the Commissioner of Corrections (hereinafter: Commissioner). N.J.S.A. 30:1B–4. Classification and transfer of state prisoners is confined to the Commissioner's sole discretion. N.J.S.A. 30:1B–6; 30–1B–9; 30:4–91.1; 30:4–91.2; 30:4–91.3; and 30:4–92. Pursuant to his authority, the Commissioner created the Inter-Institutional Classification Committee and separate Institutional Classification Committees for each institution to assign and reassign inmates to specific institutions and custody levels.[5] To facilitate and standardize the decision-making process of these committees, the Commissioner promulgated a set of standards which set forth their duties and responsibilities as well as the criteria which are to guide their decision making.

Within the prison system, there are three custody levels to which the Classifications Committees may assign inmates: maximum, gang minimum, and minimum. The difference between these levels is set forth in Standard 853.271:

> In maximum custody, inmates are assigned to a range of activities within the institution enclosure under constant supervision. In gang minimum custody, inmates are assigned to activities within the institutional grounds under the continuous surveillance of a supervisor. In minimum custody, inmates are assigned to activities and movements within the

areas of institutional jurisdiction without constant supervision; or they are assigned to satellite units. Minimum custody is a prerequisite for considering the assignment of inmates to satellite units and community release programs such as work release and furlough.[6]

The criteria for minimum custody eligibility are described in Standard 853.[7] Standard 853.273 sets forth certain "General Considerations for Reduced Custody." It prescribes that decisions on changes in custody are to be "based upon institutional reports and the criteria of eligibility of the custody level." *Id.* With respect to minimum custody it states:

> An inmate is considered for minimum custody when he has made a satisfactory institutional adjustment and when he can meet all the criteria for eligibility. In addition, it must be the judgment of the Institutional Classification Committee that he can successfully benefit from reduced custodial supervision.[8]

One of the criteria for eligibility is the length of the sentence an inmate is serving. Inmates with maximum sentences in excess of ten years must spend some time incarcerated in maximum custody before they can be considered for minimum custody. The longer the sentence, the longer the required time in maximum custody. Standard 853.-275. In addition, the inmate who has served some time in maximum custody

---

**5.** The Inter-Institutional Classification Committee is responsible for the initial assignment of convicted males to appropriate custody levels and institutions and all decisions to transfer inmates between institutions. Standards 852.4, 852.6. The separate Institutional Classification Committees are "responsible for all assignments to and changes in custody status." Standard 853.272.

**6.** According to defendants (Brief at 1 and Attachment 2), plaintiff was granted "gang minimum" status on November 15, 1978. This fact does not moot his claim here, however, as pursuant to the challenged Standard, plaintiff will never have his custody level reduced to full minimum.

**7.** This Standard was apparently promulgated in April, 1976 by the State Board of Institutions and Agencies, which at that time controlled the

New Jersey prison system. See N.J.S.A. 30:1–1 *et seq.* (Law of 1918, ch. 147 § 102, as amended by Law of 1919, ch. 97, § 2 [1924 Suppl. §§ 34–43] (amended eff. 1972). Although the prisons' governing body has changed, these Standards have been adopted by the Commissioner and are still in effect.

**8.** The concept of "institutional adjustment" is amplified in Standard 853.274:

> An inmate's present and past institutional records are reviewed when the Institutional Classification Committee is considering him for minimum custody. The number and type of disciplinary reports received during the past year are evaluated as indicators of his current ability to exercise self control if permitted the additional freedoms inherent in minimum custody.

must generally be placed in gang minimum custody prior to his assignment to full minimum and must show a satisfactory adjustment to the intermediate level before further reduction is considered. Standard 853.273.

The Standards also provide, however, that certain classes of inmates, despite the fact that they meet the general criteria for eligibility for minimum custody, may never attain that reduced status. Inmates serving sentences for "escape" or "attempted escape" (Standard 853.276), or who have specific kinds of detainers lodged against them (Standard 853.277), or who have more than one offense of arson, fire setting, or malicious destruction (involving arson) in their records (Standard 853.279) are ineligible for minimum custody. Finally, inmates with "more than one sex offense" in their records are excluded from consideration for minimum custody (Standard 853.278).

## II.

### PLAINTIFF'S DUE PROCESS CLAIM

The "sex offense" exclusion is the only exclusion which affects plaintiff and which is challenged here.[9] Plaintiff contends first that the Standard violates his right to due process of law. He asserts that he has a "liberty" interest of constitutional magnitude in the various rehabilitative programs, such as the Community Release Agreement Program, the Work Release Program and the Furlough Program, which are available only to inmates who have "graduated" to full minimum custody. Standard 853.271. Although he does not maintain that there is a constitutional right to rehabilitation in prison, he argues that once the state establishes rehabilitative programs, a "statutory right" to those programs is created and prison officials may not thereafter arbitrarily deny this right to any inmate. Plaintiff asserts that since he will eventually be paroled and reintegrated into society, defendants' denial of access to rehabilitative programs designed to introduce the inmate back into society, solely on the basis of the two convictions for "sex offenses," is irrational.

 Our inquiry must begin with whether plaintiff has any "liberty" interest within the meaning of the Due Process Clause in the rehabilitative programs or in the minimum custody status for which he seeks the right to be considered. We find that plaintiff has no such interest. First, it

9. Standard 853.278 reads in its entirety:
 853. *CRITERIA FOR MINIMUM CUSTODY ELIGIBILITY* (Cont'd)
 .278 *Sexual Offenses*
 An inmate with more than one sex offense in his record is ineligible for minimum custody. A sexual offense involving two mutually consenting adults does not constitute an assault. An inmate with one sexual offense may be eligible for minimum custody if the following conditions are met: (1) the offense must be a nonassaultive crime, such as seduction, in which the victim was not threatened but enticed by bribery or payment; or a verbal threat of murder or assault. (2) the inmate must have a psychological or psychiatric evaluation which focuses on the inmate's criminal sexual behavior and comments on the likelihood of his committing a similar offense were he released to the community. (3) all factors of this evaluation report are considered by the Classification Committee in determining the inmate's eligibility for minimum custody.
 When an inmate has a record of only a single sexual offense of an assaultive nature such as rape, he may be considered for minimum custody, provided that steps (2) and (3) above are followed, and in addition, the recency of that offense is also taken into account in the Classification Committee's determination. In no instance is an inmate eligible for minimum custody, who has more than one offense of a sexual assaultive nature as described in these statements.
 If a commitment is not for a sexual offense per se, but the official version of the offense given in the presentence report does indicate a sexual assault involving possession but not use of a weapon; threat of a knife, aggravated assault; sadistic violence involving injury to the victim, such as torture or burning, then it should be considered as a sexual offense. An inmate falling within the purview of the Sex Offender Act may be considered for minimum custody when he has been recommended for parole by the Special Classification Review Board.
 Juvenile offenses of a sexual nature cannot be used exclusively to deny an inmate minimum custody, but should be taken into consideration in the evaluation of the inmate's eligibility for minimum custody.

is clear that prison inmates have no constitutional right to rehabilitation programs. *See Newman v. Alabama,* 559 F.2d 283 (5th Cir. 1977), *rev'd in part on other grounds sub nom. Alabama v. Pugh,* 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978); *French v. Heyne,* 547 F.2d 994 (7th Cir. 1976); *Green v. United States,* 157 U.S.App.D.C. 40, 481 F.2d 1140 (D.C. Cir. 1973).[10] Thus, any liberty interest which plaintiff may have in such programs must be accorded to him by state law. Under New Jersey law, state prisoners have no right to be assigned to any particular custody level or to have access to rehabilitative programs. The state has placed the classification of prisoners and the decision as to what privileges they will receive solely within the discretion of the Commissioner of the Department of Corrections. N.J.S.A. 30:1B–6; 30:4–91.1 to 30:4–91.3; 30:4–91.6; 30:4–92. *See Marnin v. Pinto,* 463 F.2d 583, 586 (3rd Cir. 1972); *State v. Rydzewski,* 112 N.J.Super. 517, 271 A.2d 907 (App.Div.1970). Thus, any expectation an inmate may have in being considered for a particular classification or program is too insubstantial to rise to the level of due process protection. *Cf. Meachum v. Fano,* 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976); *Montanye v. Haymes,* 427 U.S. 236, 96 S.Ct. 2543, 49 L.Ed.2d 466 (1976) (Due Process Clause not triggered by transfer of state prisoner from one institution to another where, under state law, prisoner had no right to remain in any specific prison and no justifiable expectation that he would not be transferred absent misconduct).

In *Moody v. Daggett,* 429 U.S. 78, 88 n. 9, 97 S.Ct. 274, 50 L.Ed.2d 236 (1976), the Supreme Court held that the Constitution does not guarantee federal prisoners the right to a particular classification or access to rehabilitative programs. In that case, the petitioner, a federal parolee imprisoned for crimes committed while on parole, claimed that he was entitled to an immediate parole revocation hearing where the Parole Board had lodged a parole violator warrant with the institution in which he was confined. The petitioner argued that the pending warrant adversely affected his prison custody level and access to institutional programs. The Supreme Court responded:

> We have rejected the notion that every state action carrying adverse consequences for prison inmates automatically activates a due process right. In *Meachum v. Fano,* 427 U.S. 215 [, 96 S.Ct. 2532, 49 L.Ed.2d 451] (1976), for example, no due process protections were required upon the discretionary transfer of state prisoners to a substantially less agreeable prison, even where that transfer visited a "grievous loss" upon the inmate. The same is true of prisoner classification and eligibility for rehabilitative programs in the federal system.. Congress has given federal prison officials full discretion to control these conditions of confinement, 18 U.S.C. § 4081, and petitioner has no legitimate statutory or constitutional entitlement sufficient to invoke due process.

429 U.S. at 88 n. 9, 97 S.Ct. at 279. Moreover, as the Supreme Court has often reminded us, "[t]he federal courts do not sit to supervise state prisons, the administration of which is of acute interest to the States." [11] *Meachum v. Fano, supra,* 427 U.S. at 229, 96 S.Ct. at 2540 (1976); *Preiser v. Rodriguez,* 411 U.S. 475, 491–92, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973).

---

**10.** However, in the face of "other conditions," lack of rehabilitative programs can be violative of the Eighth Amendment's prohibition against cruel and unusual punishment. *McCray v. Sullivan,* 509 F.2d 1332 (5th Cir.), *cert. denied,* 423 U.S. 859, 96 S.Ct. 114, 46 L.Ed.2d 86 (1975); *Finney v. Arkansas Board of Corrections,* 505 F.2d 194 (8th Cir. 1974) (prison officials ordered to submit a plan for treatment and rehabilitation of inmates where state prisoners lived under constant threat of physical and mental abuse if their work fell below arbitrary standards, where rehabilitative programs were not generally available and where inmates were given almost no time for recreation or self-improvement activities).

**11.** New Jersey courts also have refused to interfere in decisions regarding inmate classification or work assignments "short of action which deprives an inmate of his constitutional rights or action which is clearly capricious or arbitrary . . . ." *State v. Rydzewski, supra,* 112 N.J.Super. at 522, 271 A.2d at 910.

III.

## PLAINTIFF'S EQUAL PROTECTION CLAIM

Plaintiff also argues that the Commissioner's action is arbitrary and capricious and denies plaintiff equal protection of the law. He asserts that it is irrational for the Commissioner to decide that no inmate who has committed two sex offenses may have access to certain rehabilitative programs, while allowing such access to other, possibly more violent criminals, such as murderers and armed robbers. Plaintiff asserts that there is no rational basis for so distinguishing sex offenders from other criminals.

*A. Standard of Review.*

The Commissioner must demonstrate only a rational basis for the distinction he has made between "sex offenders" and other inmates in order to withstand plaintiff's equal protection attack. Although prison inmates are protected by the Equal Protection Clause of the Fourteenth Amendment, *Durso v. Rowe,* 579 F.2d 1365, 1372 (7th Cir. 1978), *cert. denied,* 439 U.S. 1121, 99 S.Ct. 1033, 59 L.Ed.2d 82 (1979), treatment of prisoners is not subject to strict judicial scrutiny. "[I]n the absence of fundamental rights or a suspect classification, equal protection requires only that a classification which results in unequal treatment bear some rational relationship to a legitimate state purpose." *French v. Heyne, supra,* 547 F.2d at 997. *See Hodges v. Klein,* 562 F.2d 276, 278 (3rd Cir. 1977).

*B. Rationality of Treating Sex Offenders Differently than Other Inmates.*

The Court finds that the challenged Standard, 853.278, on its face denies plaintiff and all similarly situated inmates equal protection as guaranteed by the Fourteenth Amendment. The Court's holding does not, however, rest on plaintiff's contention that the Commissioner may not rationally distinguish among inmates who have been convicted of different crimes. On the contrary, it is perfectly rational to differentiate between prisoners on the basis of the nature of the crime they have committed.

The Commissioner certainly may declare that individuals who perpetrate specific types of crimes are conclusively presumed not to be trustworthy enough to be granted minimum custody and its attendant privileges. It is not irrational for the Commissioner to conclude, for example, that rapists should never be allowed access to the general public prior to release from prison, while armed robbers can at least be considered for programs which will permit them such access. It is precisely this sort of decision that New Jersey has placed in the Commissioner's sound discretion. The judgments involved must be made by the Commissioner, not the courts. As the Supreme Court forcefully reminded us last term, federal courts must pay great deference to the informed discretion of prison officials:

> [U]nder the Constitution, the first question to be answered is not whose plan is best, but in what branch of the Government is lodged the authority to initially devise the plan. This does not mean that constitutional rights are not to be scrupulously observed. It does mean, however, that the inquiry of federal courts into prison management must be limited to the issue of whether a particular system violates any prohibition of the Constitution, or in the case of a federal prison, a statute. The wide range of "judgment calls" that meet constitutional and statutory requirements are confided to officials outside of the Judicial Branch of Government.

*Bell v. Wolfish,* 441 U.S. 520, 562, 99 S.Ct. 1861, 1886, 60 L.Ed.2d 447 (1979).

*C. Constitutionality of Classification Established by Standard 853.278.*

The Fourteenth Amendment requires that all individuals, including state prisoners, similarly situated be similarly treated. There may well be a rational basis for treating sex offenders differently than other prisoners. However, in order for the Court to determine whether such a basis exists, we must know what constitutes a "sex offense." The regulation must define the exercise of the discretion to treat classes of prisoners differently—or there is no rational basis for the distinction made.

Standard 853.278 violates the Fourteenth Amendment because it denies minimum custody to inmates convicted of more than one "sex offense," but neither defines sex offense nor incorporates any definition by reference. It is simply impossible to determine the meaning of "sex offense" as used in the regulation.

When Standard 853.278 was promulgated in 1976, the New Jersey Criminal Code then in effect contained no crime or series of crimes labeled a "sex offense." *See* Title 2A, New Jersey Statutes Annotated (Repealed effective September 1, 1979).[12] Definitions of crimes which might be labeled "sex offenses" were scattered throughout the code [13] and encompassed acts ranging from forcible rape and carnal abuse of children to bigamy and the sale of pornographic materials. The Code contained a Sex Offender Act, which provided for specialized psychiatric treatment for individuals convicted of specified sex crimes.[14] N.J. S.A. 2A:164–3 to 164–13 (repealed by L.1978, c. 95). Although it is possible that the Commissioner meant "sex offenses" to be those crimes specified in N.J.S.A. 2A:164–3, Standard 853.278 gives no such indication. Indeed, it appears that the defi-

nition of "sex offense" in the regulation is *not* the same as the crimes enumerated in the Sex Offender Act because the Standard provides that:

An inmate falling within the purview of the Sex Offender Act may be considered for minimum custody when he has been recommended for parole by the Special Classification Review Board.

Because it is impossible to determine what crimes are encompassed within the term "sex offense" as used in Standard 853.278, the danger exists that individuals convicted of the same crimes will be treated differently because the Institutional Classification Committee at one prison considers those crimes "sex offenses" while the Committee at another prison does not. In failing to properly define the class of prisoners it purports to treat differently from others, the challenged Standard 853.278 violates the Equal Protection Clause.

CONCLUSION

The Commissioner may not merely declare that those guilty of two "sex offenses" are not eligible for minimum custody and its privileges; he must specifically

**12.** Chapter 14 of the New Jersey Criminal Code, N.J.S.A. 2C:14–1 to 14–7, effective September 1, 1979, is entitled "Sexual Offenses." There is no reason to believe, however, that Standard 853.278, promulgated in 1976, incorporates 1979 amendments to the New Jersey Code. Moreover, the new code defines various sex crimes differently than the former code; in fact, the entire structure of the code has changed. The new code is based on the Model Penal Code. Rather than listing criminal acts separately under different sections and labels, such as "fornication," "rape," or "sodomy," for example, the new code presents a series of definitions, N.J.S.A. 2C:14–1, followed by descriptions of three separate crimes, "Sexual Assault," N.J.S.A. 2C:14–2, "Criminal Sexual Contact," N.J.S.A. 2C:14–3, and "Lewdness," N.J.S.A. 2C:14–4. Thus, there is no longer, for example, a crime in New Jersey specifically entitled "rape."

**13.** The following crimes were listed under "Sex Offenses" in the Index to New Jersey Statutes Annotated:

| | |
|---|---|
| Adultery | § 2A:88 1 |
| Bigamy | §§ 2A:92 1, 2A:92 2 |
| Fornication | § 2A:110 1 |
| Incest | §§ 2A:114–1, 2A:114–2 |
| Indecency and Obscenity | §§ 2A:115–1 to 2A:115–5 |
| Prostitution | §§ 2A:133–1 to 2A:133–12 |
| Rape and Carnal Abuse | §§ 2A:138–1, 2A:138–2 |
| Seduction | §§ 2A:142–1 to 2A:142–2 |
| Sexual Exploitation of Children | §§ 2A:142A–1 to 2A:142A–5 |
| Sodomy | §§ 2A:143–1, 2A:143–2 |

(Repealed by L.1978 c. 95).

**14.** The Sex Offender Act, N.J.S.A. 2A:164 3, provided in pertinent part:

Whenever a person is convicted of the offense of rape, carnal abuse, sodomy, incest, private lewdness, open lewdness, indecent exposure or impairing the morals of a minor, or of an attempt to commit any of the aforementioned offenses, or assault with intent to commit rape, carnal abuse or sodomy, the judge shall order the commitment of such person to the Diagnostic Center for a period not to exceed 60 days.

The Sex Offender Act was repealed when New Jersey's new Criminal Code became effective on September 1, 1979. The Sex Offender Act has, in substance, been reenacted in Chapter 47 of the new New Jersey Criminal Code, N.J.S.A. 2C:47 1 to 47 7, entitled "Adult Diagnostic and Treatment Center."

indicate the crimes which make repeated violators ineligible.

The constitutional infirmity of Standard 853.278 can be easily rectified by a more precise definition of "sex offenses." The Commissioner may establish the classification by reference to specific sections of the New Jersey Criminal Code, by definition of specific crimes, by a description of the manner in which specific crimes are committed, or by any other method that he chooses—so long as the classification is capable of objective definition and application.

Accordingly, this Court holds that Department of Corrections Standard 853.278 is unconstitutional. Defendants are enjoined from applying said Standard unless, within thirty days hereof, the Commissioner properly defines the term "sex offense" as it is used therein.[15]

The parties will bear their own costs.

15. Because the Court is unable to discern the definition of "sex offense" in the context of Standard 853.278, it would not be proper for us to consider whether the inclusion of certain offenses within the definition would make the classification irrational in violation of the Equal Protection Clause.