Darrell Duane KINCAID,
Plaintiff-Appellant,

v.

Jack R. DUCKWORTH, Warden, Indiana
State Prison, Defendant-Appellee.

No. 81–1070.

United States Court of Appeals,
Seventh Circuit.

Argued June 11, 1982.

Decided Sept. 24, 1982.

Rehearing and Rehearing En Banc
Denied Jan.4, 1983.

Darryl L. DePriest, Jenner & Block, Chicago, Ill., for defendant-appellant.

Charles N. Braun, II, Deputy Atty. Gen., Indianapolis, Ind., for plaintiff-appellee.

Before PELL and COFFEY, Circuit Judges, and EAST,* Senior District Judge.

EAST, Senior District Judge.

Darrell Duane Kincaid (Kincaid) appeals from a final judgment entered on December 15, 1980 by the District Court dismissing Kincaid's *pro se* 42 U.S.C. § 1983 complaint for failure to state a claim upon which relief could be granted. We note jurisdiction under 28 U.S.C. § 1291 and affirm.

*Authority of the Indiana Department of Correction (Department) Over Inmates' Classifications of Security*

On July 11, 1975, Kincaid was sentenced by an Indiana state court to life imprisonment under Indiana Code (I.C.) § 35–13–4–1(a) (repealed effective October 1, 1977), which provided in pertinent part: "Whoever kills a human being either purposely and with premeditated malice . . . shall be imprisoned in the state prison for life."

The 1976 revision of the Indiana Criminal Code, Acts 1976, P.L. 148 § 8, effective October 1, 1977, repealed the life imprisonment statute and substituted for it I.C. § 35–50–2–3 (1979), which provides in part:

Murder.—(a) A person who commits murder shall be imprisoned for a fixed term of forty (40) years, with not more than twenty (20) years added for aggravating circumstances or not more than ten (10) years subtracted for mitigating circumstances; . . .

(b) [Provision for death sentence].

I.C. § 35–4.1–5–3(a) vests wide discretion in the Department regarding prison inmates' designations of degree of security (maximum, medium or minimum) while imprisoned. Subsection (c) of that statute curbs the Department's discretion by providing:

Notwithstanding subsections (a) and (b) of this section, a person convicted of murder or a Class A felony shall be assigned to maximum security for the first two (2) years of his commitment. After those first two (2) years, the department may change the degree of security to which the person is assigned.

The Department duly promulgated Regulation IV(C)(1) which, as a matter of prison policy, further curbed its discretion in the classification of security by providing:

Inmates serving a life sentence will be eligible for consideration by the Institutional Classification Committee for a minimum security assignment six (6) years from the date of the admission to the Department of Correction.

On August 13, 1979 (two years and a month after imprisonment), Kincaid submitted a Trusty or Change of Status Request to authorities at the Indiana State Prison by which he requested a minimum security or trusty status. This request was denied by authorities at the prison for the reason that he had not served six years of his commitment as required by Regulation IV(C)(1).

*Issue on Review*[1]

■ Kincaid contends on appeal that the full force and effect of Regulation IV(C)(1) deprives him of constitutional equal protection and due process guarantees in that the regulation, both on its face and as applied, arbitrarily treats inmates convicted of murder and sentenced to life imprisonment (like himself) differently and more harshly than inmates convicted of murder and sentenced to a term of years under the 1976 revised statute.[2] We disagree.

---

* Honorable William G. East, Senior United States District Judge for the District of Oregon, sitting by designation.

1. In the District Court, Kincaid asserted an additional claim based on the Eighth Amendment. He does not, however, appeal the court's dismissal of his Eighth Amendment claims, and that issue is therefore not before us.

2. Kincaid concedes that since he has now served more than six years of his sentence, his claim for injunctive relief is moot. *O'Shea v. Littleton,* 414 U.S. 488, 495, 94 S.Ct. 669, 675, 38 L.Ed.2d 674 (1974). *See also Mawhinney v. Henderson,* 542 F.2d 1 (2d Cir. 1976); *Gardner v. Luckey,* 500 F.2d 712 (5th Cir. 1974), *cert. denied,* 423 U.S. 841, 96 S.Ct. 73, 46 L.Ed.2d 61 (1975). The damage claims are not moot.

*Equal Protection*

█ Kincaid specifically argues that Regulation IV(C)(1) treats similarly situated groups differently in that he, as a person convicted of murder under the "old code" and serving a life sentence, is being treated differently from a person convicted of the same offense under the "new code" and serving a term of years.

As Kincaid noted, with the 1977 recodification, the Indiana legislature moved from life sentences for murder to sentences for a term of years. Kincaid urges an inference that, in so doing, the legislature intended to eliminate the difference between life sentences and sentences for a term of years. The argument is without merit.

Kincaid's life sentence under the "old code" was mandated by statute, while the imposition sentences for murder under the "new code" ranging from ten to sixty years are discretionary with the state court, depending upon that court's consideration of various statutory factors and circumstances.

Even under the "new code," however, in some circumstances a death sentence is provided for. Thus, the revised Criminal Code *did not* inferentially or expressly mitigate prior life sentences.

It follows therefore that sentencing responsibilities are the obligation of the courts and the preservation of prison security is the obligation of the prison authorities. The well known and universally recognized prison security risks attending life termers are ample rational reasons to justify the four year differential for eligibility of discretionary consideration of an inmate's request for a change in security status. The experience of prison authorities in maintaining prison security is reason enough for the adoption of Regulation IV(C)(1).

As the District Court noted:

States have traditionally had wide discretion in classification of prisoners. "Classification of inmates is a matter of prison administration and management with which federal courts are reluctant to interfere except in extreme circumstances." *Jones v. United States,* 534 F.2d 53 (5th Cir.), *cert. den.,* 429 U.S. 978 [97 S.Ct. 487, 50 L.Ed.2d 586] (1976); *Young v. Wainwright,* 449 F.2d [338] 339 (5th Cir. 1971); [citations]. This case does not present any extreme circumstances.

We conclude that the District Court did not err in rejecting Kincaid's contention of unequal treatment under the Fourteenth Amendment.

*Due Process*

█ Kincaid claims that Regulation IV(C)(1) and the actions of the Department in denying him a reclassification of security encroached upon his constitutional right of due process. The claim is without merit.

In order for the due process clause to be applicable, there must be a protected liberty interest created by state law or regulation. *Meachum v. Fano,* 427 U.S. 215, 223–24, 96 S.Ct. 2532, 2537–38, 49 L.Ed.2d 451 (1976). Thus, the inquiry in this cause must begin with an analysis of whether Kincaid had any liberty interest in the minimum custody status for which he applied within the meaning of the due process clause.

Not every state action carrying adverse consequences for prison inmates automatically activates a due process right. *Moody v. Daggett,* 429 U.S. 78, 86–88, 97 S.Ct. 274, 278–279, 50 L.Ed.2d 236 (1976); *Meachum v. Fano,* 427 U.S. at 224, 96 S.Ct. at 2538.

Under Indiana law, state prisoners have no right to be assigned any particular security classification. The state has placed the decision to change the security classification of prisoners who have served two years solely within the discretion of the Department. Thus, any expectation an inmate may have in being considered for a lower security clearance is too insubstantial to rise to the level of due process protection. *Meachum v. Fano,* 427 U.S. at 228, 96 S.Ct. at 2540; *Montanye v. Haymes,* 427 U.S. 236, 243, 96 S.Ct. 2543, 2547, 49 L.Ed.2d 466 (1976); *Hluchan v. Fauver,* 480 F.Supp. 103, 108 (D.N.J.1979).

Kincaid's reliance upon the Department's reproduction of various regulations in the inmate handbook for an attack upon Regulation IV(C)(1) is misplaced. The regula-

tions dealt with in the handbook are all those governing the procedures to be utilized in requesting a reclassification of security status and the Department's determination of the merits thereof.

Kincaid's predicament is not because the Department had failed to follow or misapplied any pertinent regulation, but solely because Kincaid was not yet eligible under Regulation IV(C)(1) to seek reclassification of his security status.

The District Court did not err in concluding that "[t]here is no expectation [of a liberty interest] rooted in [Indiana] law or regulations which create an obligation to reclassify" Kincaid on the basis of the due process clause.

The final judgment of the District Court is affirmed. AFFIRMED.

PELL, Circuit Judge, dissenting.

This appeal appears to me to present an egregious case of non-rational violation of a fundamental constitutional equal protection right. I therefore respectfully dissent.

In simple terms, the Indiana Department of Corrections, by regulations regarding conditions of confinement, treats those persons convicted of murder and sentenced to a term of years differently than those persons convicted of murder and sentenced to life imprisonment even though every aspect of the crimes committed and the person's individual likelihood of being a security risk are identical.

The picture presented is a semantic distinction without a discernible difference, the result being dependent wholly on a chronological accident. There is no demonstrated showing that Kincaid who was convicted in 1975 of murder was in fact a security risk. Nevertheless, by virtue of the regulation he was not entitled to seek a lesser security status until 1981. Another individual convicted of the same crime in late 1977 would have been eligible to seek the lesser status in 1979. The point would be made even more graphically if Kincaid had been sentenced to life imprisonment in early 1977 in which case by virtue of the

regulation his maximum security status would have continued nearly four years longer than the person convicted of murder in late 1977 who was sentenced to a term of years.

The majority opinion correctly sets forth the basic facts which need not be repeated here. Likewise the pertinent statutes and regulations are correctly stated. Indeed, the basic issue is correctly summarized in the majority opinion which sets forth Kincaid's contention that Regulation IV(C)(1) treats similarly situated groups differently in that he, as a person convicted of murder under the "old code" and serving a life sentence, is being treated differently from a person convicted of the same offense under the "new code" and serving a term of years.

The treatment of prison inmates is protected by the equal protection clause of the Fourteenth Amendment. *Cruz v. Beto,* 405 U.S. 319, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972); *Durso v. Rowe,* 579 F.2d 1365, 1372 (7th Cir. 1978), *cert. denied,* 439 U.S. 1121, 99 S.Ct. 1033, 59 L.Ed.2d 82 (1979). In *Hluchan v. Fauver,* 480 F.Supp. 103 (D.N.J. 1979), a prison classification was involved regarding access to rehabilitative programs. The court then citing *Durso* stated on application of that case it seemed obvious that the Fourteenth Amendment recognizes that all individuals including state prisoners similarly situated be similarly treated. *Id.* at 109. Statutory classifications violate the equal protection clause if they are not rationally related to "some legitimate, articulated state purpose." *McGinnis v. Royster,* 410 U.S. 263, 270, 93 S.Ct. 1055, 1059, 35 L.Ed.2d 282 (1973); *Weber v. Aetna Casualty & Surety Co.,* 406 U.S. 164, 172, 92 S.Ct. 1400, 1405, 31 L.Ed.2d 768 (1972). This requirement of the equal protection clause applies equally to administrative classifications. *French v. Heyne,* 547 F.2d 994, 997 (7th Cir. 1976).

Although Kincaid had no constitutional right to a particular security classification, when the classification system was established its distinctions could not be arbitrary, irrational, or discriminatory. *See Wolff v.*

*McDonnell,* 418 U.S. 539, 555–56, 94 S.Ct. 2963, 2974, 41 L.Ed.2d 935 (1974). Equal protection requires that an inmate classification system bear some rational relationship to the objective being sought. *Ramos v. Lamm,* 485 F.Supp. 122, 160 (D.Colo. 1979), *modified,* 639 F.2d 559 (10th Cir. 1980), *cert. denied,* 450 U.S. 1041, 101 S.Ct. 1759, 68 L.Ed.2d 239 (1981). This court has employed the rational relationship standard of review. *Moeck v. Zajackowski,* 541 F.2d 177, 181–82 (7th Cir. 1976) (the state's refusal to transport a prisoner to federal court on the same basis as to a state court was a denial of equal protection). *See also French v. Heyne,* 547 F.2d 994, 996–99 (7th Cir. 1976) (an Indiana prison classification system which limited vocational training programs to prisoners with short indeterminate sentences and denied any vocational or educational programs to inmates with longer indeterminate and determinate sentences or inmates who already possessed a vocational trade or high school degree had no rational basis.).

In both *French v. Heyne,* 547 F.2d 994, 999 (7th Cir. 1976), and *Durso v. Rowe,* 579 F.2d 1365, 1372 (7th Cir. 1978), *cert. denied,* 439 U.S. 1121, 99 S.Ct. 1033, 59 L.Ed.2d 82 (1979), this court ruled that the state must come forward and identify the purported legitimate state interest furthered by prison rules or regulations in cases challenging prison administrative classifications. In this case, however, the defense offered no justification to the district court for the disparity in treatment between persons convicted of murder in Indiana. The defense merely stated that: "Given the inherent difference between a life sentence and a sentence for a term of years, there is a rational basis for this determination and there are no extreme circumstances presented here which would justify review of the Department of Correction classification procedures by this Court."

There was no articulation of what the "inherent differences" were between persons convicted of murder and sentenced to a term of years and persons convicted of murder and sentenced to life that purportedly offer a rational basis for the disparate treatment of these inmates regarding their eligibility for a change in the degree of security. Furthermore, the district court did not inquire into the reasons for the Department of Corrections' divergent treatment of these inmates before dismissing Kincaid's complaint. Indeed, the district court, in its memorandum and opinion, merely repeated the argument made by the Warden, that: "Given the inherent differences between a life sentence and a sentence for a term of years, there is a rational basis for this determination and there are no extreme circumstances presented here which would justify review of the Department of Correction classification procedures by this Court." This court has ruled that a district court ought not dismiss an equal protection claim on the basis of reasons unrevealed in the record. *Durso v. Rowe,* 579 F.2d 1365, 1372 (7th Cir. 1978), *cert. denied,* 439 U.S. 1121, 99 S.Ct. 1033, 59 L.Ed.2d 82 (1979) (citing *Cruz v. Beto,* 405 U.S. 319, 321, 92 S.Ct. 1079, 1081, 31 L.Ed.2d 263 (1972)).

With all respect, the majority opinion articulates no rational reason for the disparate treatment. I note that the majority opinion refers to "well-known and universally recognized prison security risks attending life-termers" as being ample rational reasons to justify the four-year differential. I assume the majority is drawing upon some personal knowledge because the record contains no basis for this statement. Indeed, I query whether there are not prisoners serving short terms who in fact are worse security risks than prisoners serving life sentences. What is more significant, however, is that the majority does not endeavor to explain why the security risks attending life-termers who have been convicted of murder are any greater than the security risk attending specific term inmates who have been convicted of the same crime yet who are treated differently by the regulation.

The majority opinion adverts to the experience of prison authorities in maintaining prison security. I do not quarrel with the idea that this is an area in which the experi-

ence of prison authorities might come into play but the record is a vacuum insofar as showing any difference bearing on prison security between the two classifications created by the regulation. It would have been helpful to have had this experience of prison authorities articulated in the record in support of a rational basis for the disparate treatment. On the facts of this case as to which there is no disagreement, I am unable to conceive any rational basis. The regulation was being applied in accordance with its specific terms. Therefore it appears to me that it violates equal protection on its face. This withernam should not be approved by this court.

There are several things which are not involved in this case. We are not talking about a prisoner walking free on the streets again by virtue of a constitutional violation. We are not even dealing with an automatic right to achieve a lesser security status after the expiration of a certain period of time. All we have involved is a matter of eligibility to seek that status. I cannot conceive that any life termer who is in fact a security risk will be granted a lesser status. In the present case, however, Kincaid who applied for the lesser status two years after his incarceration was not given the privilege of pursuing the different status, not because he was considered a poor security risk, but simply because he had not served six years of his commitment as required by the express language of the regulation.

Kincaid has also, through his appointed counsel, made a persuasive argument that his due process rights were violated. Because in my opinion the equal protection claim is so overwhelming, I see no need to address other aspects of his appeal.