935 F.2d 272
 UNPUBLISHED DISPOSITION
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Michael E. WADE, Plaintiff/Appellant,
v.
James AIKENS, Commissioner, Department of Corrections, John
Nunn, Director, Adult Institutions and Norman
Owens, Director, Classification, et al.,
Defendants/Appellees.
 No. 90-3118.
 United States Court of Appeals, Seventh Circuit.
 Submitted May 29, 1991.*
Decided June 6, 1991.
 
 Before CUMMINGS, POSNER and MANION, Circuit Judges.
 
 ORDER
 
 1
 Michael Wade appeals pro se from the district court's grant of summary judgment for the defendants. For the following reasons we affirm.[1]
 
 I.
 
 2
 Michael Wade is an inmate at the Indiana State Prison. Wade began serving a life-sentence in 1978 for inflicting injury during the commission of a robbery and in 1988 he received a minimum security classification, permitting him to be housed in the K Dormitory[2] (now called the Lakeside Correctional Unit), located outside the Indiana State Prison's main security area. On March 12, 1990, the defendants transferred Wade from the K Dormitory to a maximum security unit inside the walls of the Indiana State prison, apparently increasing his minimum security classification to a maximum security classification. Wade did not receive notice of or a hearing concerning the change in his security classification and his subsequent transfer. There is no suggestion that the defendants increased Wade's security classification and transferred him for disciplinary reasons. Wade filed an amended complaint under 42 U.S.C. Sec. 1983 against several prison officials for allegedly violating his constitutional rights when they took away his minimum security status and transferred him to a maximum security unit without due process of law and in retaliation for his filing a tort claim against the prison. The district court granted summary judgment for the defendants.
 
 II.
 
 3
 This court reviews the district court's grant of summary judgment de novo and will affirm only "if ... there is no genuine issue as to any material fact ... and the moving party is entitled to judgment as a matter of law." Trautvetter v. Quick, 916 F.2d 1140, 1147 (7th Cir.1990) (quoting Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986)). When reviewing the grant of summary judgment we draw all reasonable inferences in the light most favorable to the non-movant. Randle v. LaSalle Telecommunications Inc., 876 F.2d 563, 567 (7th Cir.1989).
 
 
 4
 Initially, we note that there is nothing in the record to support Wade's contention that the district court ignored his amended complaint and affidavit in ruling on defendants' motion for summary judgment. Moreover, our de novo review of the record convinces us that the district court properly granted defendants' motion for summary judgment.
 
 
 5
 Wade argues that he has a liberty interest in retaining his minimum security classification and that the defendants violated his due process rights by increasing his minimum security status without notice or a hearing. The protections of the due process clause are triggered by the existence of a life, liberty, or property interest which constitutes a "legitimate claim of entitlement." Kentucky Dept. of Corrections v. Thompson, 490 U.S. 454, 460 (1989); Russ v. Young, 895 F.2d 1149, 1152 (7th Cir.1989). A protected liberty interest may originate from the due process clause itself or state law may create a protected liberty interest. Id.
 
 
 6
 Indiana prisoners possess no liberty interest in their security classifications. See Kincaid v. Duckworth, 689 F.2d 702, 704 (7th Cir.1982), cert. denied, 461 U.S. 946 (1983). Wade contends that Indiana Code Section 11-10-1-6, addressing annual review of an inmate's classification and assignment, creates an enforceable liberty interest in a prisoner classification status. But a state-created procedural right does not, in itself, create a protectible liberty interest. See Shango v. Jurich, 681 F.2d 1091, 1101 (7th Cir.1982). Section 11-10-1-6 sets forth a non-exhaustive list of factors for prison officials to consider when classifying inmates, but it does not impose any substantive limits on official discretion in classifying inmates or mandate any particular outcome. As such, it is insufficient to create a constitutionally protected liberty interest in security classifications.
 
 
 7
 Wade argues that Indiana Department of Corrections Rules IV and V (contained in Volume II--Manual of Policies and Procedure) limit the discretion of prison officials in classifying and assigning inmates, thus creating a liberty interest. Because Wade provides no statutory authority creating a liberty interest in security classifications, these rules, standing alone, do not provide Wade with a protectible liberty interest in his minimum security classification. See Mathews v. Fairman, 779 F.2d 409, 413 (7th Cir.1985). Moreover, these rules do not any place any substantive limits on official discretion. Accordingly, the reclassification of Wade's security status need not comply with the due process clause requirements.
 
 
 8
 Wade also challenges his transfer from the K Dormitory to a unit within the Indiana State Prison as being violative of due process because he did not receive a notice of or a hearing on the transfer. The due process clause, in itself, does not give prisoners a liberty interest in remaining in a particular placement within an institution. Russ, 895 F.2d at 1153. Indiana Code Section 11-10-1-6 does not give rise to a protected liberty interest in remaining in a particular assignment within the Indiana Prison System because, as stated earlier, it contains merely procedural guidelines. See Russ, 895 F.2d at 1153.
 
 
 9
 Wade argues that Executive Directive 89-20, discussing the revised offender placement criteria for the K Dormitory, gave him a protected liberty interest in remaining in the K Dormitory. It states in pertinent part that "[o]ffenders already living at K Dormitory may remain in K Dormitory based on continuing good conduct, work performance, and adjustment." Wade contends that because he has an excellent work record and has no conduct reports or adjustment problems he has a protected interest in remaining in the K Dormitory. Even assuming that Executive Directive 89-20 has the force of a regulation, standing alone, it does not create a liberty interest in remaining in a particular unit within the prison. Moreover, it imposes no substantive limitations on official discretion in classifying or transferring inmates. See Williams v. Faulkner, 837 F.2d 304, 309 (7th Cir.1988) ("[a]bsent some statutory or regulatory provision that clearly limits prison officials in their exercise of discretion, a prisoner may be transferred for any reason, or for no reason at all"). Consequently, the defendant's decision to transfer Wade need not comply with the due process protections.
 
 
 10
 Even though the decision to transfer need not comply with due process, the defendants may not transfer Wade in retaliation for protected speech. See Cain v. Lane, 857 F.2d 1139, 1145 (7th Cir.1988). Wade contends that the defendants transferred him to get even for his filing a tort claim against the prison. In response to defendants' motion for summary judgment on his retaliation claim, Wade attached his own affidavit to the amended complaint in which he alleges that defendant Timothy Todd, his unit manager, "informed me several times in response to my complaint that I should stop complaining about the matter, further stating that I was only at Lakeside under the Grandfather Clause, and could be run inside because of [sic] adjustment problem." The defendants counter that Wade's transfer resulted from a system-wide change in the assignment criteria set forth in Executive Directive 90-1, which became effective on February 1, 1990.[3]
 
 
 11
 Defendant Norman Owens' (Indiana Department of Correction's Director of Classification) affidavit, attached to defendants' motion for summary judgment, indicates that the prison-wide change in assignment criteria was the sole reason for Wade's transfer. Wade's allegation that defendant Todd warned him about filing a tort claim against the prison does not create a genuine issue of material fact and lacks sufficient specificity to preclude a finding of summary judgment. He does not allege in what context Todd made the statement or even when he made the statement. Wade's affidavit does not link his transfer to the alleged remark. Moreover, Wade does not present any evidence that defendants' proffered reason for his transfer, a system-wide change in the assignment criteria, was not the real reason for his transfer. Nor is there anything in the record to cast doubt on the defendants' sworn statement that they transferred Wade pursuant to Executive Directive 90-1. Thus, Wade's claim that the transfer occurred in retaliation for his tort suit and complaints is defeated.
 
 III.
 
 12
 For the above reasons we affirm the district court's grant of summary judgment in favor of the defendants.[4]
 
 
 13
 AFFIRMED.
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Circuit Rule 34(f). No such statement having been filed, the appeal has been submitted on the briefs
 
 
 [1]
 On appeal, Wade does not challenge the district court's rulings that the eleventh amendment bars any damage claims against the defendants in their official capacities and that it lacked subject matter jurisdiction to compel the Indiana Department of Corrections to comply with its executive directive. See Pennhurst State School and Hospital v. Haldeman, 465 U.S. 89, 106 (1984)
 
 
 [2]
 Wade refers to the K Dormitory as a minimum security unit. According to the defendants and Executive Directive 89-20, the K Dormitory became a medium security unit on May 22, 1989
 
 
 [3]
 There is no merit to Wade's contention that Executive Directive 90-1 does not apply to the K Dormitory because it was not mentioned in the directive. Executive Directive 90-1 changed the criteria for all security level 0, 1, and 2 assignments. K Dormitory is a security level 2 assignment. After Executive Directive 90-1 became effective, Wade no longer met the criteria to remain there and consequently was transferred into a higher security unit
 
 
 [4]
 Wade also filed a Rule 59(e) motion on August 27, 1990, which the district court denied. The district court did not abuse its discretion in denying Wade relief. Wade's motion merely restated his previous arguments and presented no reason for the district court to revisit them. See Villegas v. Princeton Farms Inc., 893 F.2d 919, 924 (7th Cir.1990)